CLAYEO C. ARNOLD (State Bar No. 65070)
CHRISTINE M. DOYLE (State Bar No. 106865)
CLAYEO C. ARNOLD, A PROFESSIONAL LAW CORPORATION
865 Howe Avenue
Sacramento, California 95825
Telephone: (916) 924-3100
Facsimile: (916) 924-1829
Email: clay@justice4you.com
Email: cdoyle@justice4you.com

J. ANDREW MEYER, ESQUIRE (admitted *pro hac vice*)
JOHN A. YANCHUNIS, ESQUIRE (admitted *pro hac vice*)
RACHEL SOFFIN, ESQUIRE (admitted *pro hac vice*)
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4787
Email: ameyer@forthepeople.com
jyanchunis@forthepeople.com
rsoffin@forthepeople.com

*Attorneys for Plaintiff John Browning*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN BROWNING, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRACFONE WIRELESS, INC. d/b/a STRAIGHT TALK WIRELESS, NET10 WIRELESS, SIMPLE MOBILE and TELCEL AMERICA and WAL-MART STORES, INC.,<br><br>Defendants. | Case No. 3:14-cv-01347<br><br>(Assigned to Hon. Edward M. Chen)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>DATE:  November 13, 2014<br>TIME:  1:30 p.m.<br>CTRM:  5<br>JUDGE:  Hon. Edward M. Chen |

<u>**NOTICE OF REVISED MOTION AND REVISED MOTION**</u>

To all parties and their attorneys of record, please take notice that on November 13, 2014, at 1:30 p.m., or as soon thereafter as the matter may be heard in the above captioned Court located at 450 Golden Gate Avenue, 17ᵗʰ Floor, San Francisco, CA 94102, Courtroom 5 – 17th Floor, before the Honorable Edward M. Chen, Plaintiff John Browning, will and hereby does move the Court for an Order:

1.     Preliminarily approving the proposed settlement, as described in the Second Superseded Settlement Agreement attached hereto as Exhibit A (hereinafter the "Settlement Agreement").

2.     Conditionally certifying, pursuant to Fed. R. Civ. P. 23 and solely for the purposes of the settlement, a settlement class consisting of:

> All consumers in the United States who purchased and activated a TracFone cell phone or SIM card and/or Activation Kit or Activation Code, including without limitation any Straight Talk, Simple Mobile (including customers both before and after TracFone's acquisition of Simple Mobile on or about June 18, 2012) NET10 and/or Telcel America (collectively "TracFone" branded cell phone, SIM card and/or Activation Kit or Activation Code) and purchased and redeemed an unlimited service plan and whose data usage was Throttled, or Data Usage Suspended or Services Terminated by TracFone. Defendants are excluded from the Class as well as any entity in which either of the Defendants has a controlling interest, along with Defendants' legal representatives, officers, directors, assignees and successors. Also excluded from the Class is any judge to whom this action is assigned, together with any relative of such judge, and the spouse of any such persons.

3.     Approving in form and content the proposed notice plan outlined in the Parties' Settlement Agreement, which includes:

A.     Notice by direct mail of the Long Form Notice, attached hereto as Exhibit B, as well as a Claim Form, attached hereto as Exhibit C, to those Class Members whose addresses TracFone can readily identify, but to the extent any mail is returned as undeliverable, TracFone will make a good faith attempt to locate such class members through the National Change of Address database;

B.     If the notice provisions in paragraph A above are unsuccessful, then for those

Class Members for whom TracFone has an email address, notice will be provided by email of the Short Form Notice, attached hereto as Exhibit D;

      C.     For current TracFone customers who are known to be Class Members and for whom TracFone does not have a mailing address or an email address, or for whom notice provisions in paragraphs A and B above are unsuccessful, notice may be provided by SMS message in the form attached hereto as Exhibit E, provided that the Court expressly provides that such form of notice will not violate the Telephone Consumer Protection Act (47 U.S.C. § 227) or other state or federal statute;

      D.     For all Class Members, notice is to be accomplished by publication of the Publication Notice, attached hereto as Exhibit F, in at least two newspapers or periodicals of national circulation (such as USA Today or Parade Magazine), and also in an appropriate media designed to reach Spanish speaking Class Members, on at least two occasions in two consecutive weeks; and,

      E.     The establishment of a claims administration website which shall provide Class Members with the Long Form Notice and the Claim Form, as well as the Settlement Agreement, selected pleadings from the Court file and other information regarding the Settlement.

      4.     Finding that the proposed notice program provided by the Parties' Settlement Agreement will satisfy the requirements of Rule 23, Fed. R. Civ. P., due process and applicable law, is the best notice practicable, and shall constitute due and sufficient notice of the Settlement and Fairness Hearing to Class Members.

      5.     Directing that all proceedings in the Litigation, other than such proceedings as may be necessary to carry out the terms and conditions of the Settlement and the proceedings addressed by Order of this Court on May 23, 2014 (*Browning* Doc. Nos. 101 and 102), are hereby stayed and suspended until further order of this Court, and further enjoining all

Settlement Class Members, or any of them, from commencing, prosecuting, participating in or continuing the prosecution of, any suit asserting any of the Claims released in this Settlement in any capacity, against the Defendants, pending the final determination of whether this Settlement should be approved by the Court.

6. Conditionally designating Plaintiff as the Class Representative for the sole purpose of settlement proceedings, and his counsel John Yanchunis and J. Andrew Meyer of the Complex Litigation Group of Morgan and Morgan as Co-Lead Settlement Class Counsel as that term is defined in the Settlement Agreement.

7. Authorizing the Parties to retain a Claims Administrator and directing that as soon as practicable following an Order preliminarily approving the settlement, the Claims Administrator shall, at TracFone's expense, cause notice to be provided to Settlement Class Members in accordance with the notice program outlined in the Settlement Agreement.

8. Directing that TracFone shall, at its expense, cause the Claims Administrator to establish a website providing the information set forth above, and directing that the Claims Administrator also shall make a copy of the Long Form Notice and Claim Form available to any Class Member who requests a copy in writing or by calling toll free the Claims Administrator.

9. Scheduling a hearing to determine the reasonableness, adequacy, and fairness of the proposed settlement and whether it should be approved by the Court (the "Fairness Hearing").

10. Permitting any person falling within the definition of the Class to request to be excluded from the Class by submitting in writing (and not via telephone or email) a Request for Exclusion to the Claim Administrator within 60 days after the Claim Administrator has mailed the Short Form Notice to the Class and within 45 days prior to the Fairness Hearing.

11.     Providing that any member of the Settlement Class who objects to the approval of this Agreement may appear at the Fairness Hearing, and show cause why all terms of the proposed settlement called for by the Settlement Agreement should not be approved as fair, reasonable and adequate and why judgment should not be entered thereon, as long as that Person (a) has served on counsel of record, such that they are received by counsel on or before fourteen (14) calendar days before the Fairness Hearing, (i) a written notice of objection, including a written notice of his, her, or its intention to appear if he, she or it intends to do so, (ii) a written statement of the position he, she or it will assert, (iii) the reasons for his, her, or its position, and (iv) copies of any papers, briefs, or other matters they wish the Court to consider; and (b) filed said objections, papers and briefs, and proof of service on counsel of record on or before same date.

12.     Entering the Proposed Preliminary Approval Order, attached hereto as Exhibit G.

13.     Counsel for Plaintiff has conferred with counsel for Defendants regarding the present motion and counsel for Defendants has advised that they do not oppose the relief requested herein.

Plaintiff John Browning makes this Motion pursuant to Fed. R. Civ. P. 23(e), which is based upon this Notice and the Memorandum of Points and Authorities filed herewith as well as the pleadings and papers filed herein.

DATED:  May 30, 2014               MORGAN & MORGAN
                                   COMPLEX LITIGATION GROUP


                                   /s/J. Andrew Meyer
                                   J. ANDREW MEYER, ESQUIRE
                                   Florida Bar No. 0056766
                                   JOHN A. YANCHUNIS, ESQUIRE
                                   Florida Bar No. 0324681
                                   RACHEL SOFFIN, ESQUIRE
                                   Florida Bar No. 018054

                                   *Attorneys For Plaintiff John Browning*

v

# Table of Contents

I.      INTRODUCTION ................................................................. 1

II.     EVENTS LEADING TO SETTLEMENT ................................. 2

III.    SUMMARY OF THE PROPOSED SETTLEMENT TERMS ................. 5

     A. The Proposed Settlement Class ............................................ 5

     B. Substantive Relief Provided to Plaintiff and Class Members ................ 6

     C. Other Key Provisions ..................................................... 8

IV.    THE COURT SHOULD PRELIMINARILY CERTIFY THE PROPOSED SETTLEMENT CLASS AS THE REQUIREMENTS OF RULE 23 HAVE BEEN SATISFIED. ............................................................... 8

V.      PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS COUNSEL FOR THE PROPOSED SETTLEMENT CLASS. ....................................... 15

VI.    THE TERMS OF THE PARTIES' SETTLEMENT AGREEMENTARE IN THE BEST INTEREST OF THE SETTLEMENT CLASS, AND ARE FAIR, REASONABLE AND ADEQUATE. ......................................... 16

VII.   THE FORM AND METHOD OF CLASS NOTICE ARE ADEQUATE AND SATISFY THE REQUIREMENTS OF RULE 23. ........................... 22

VIII.   CONCLUSION ............................................................. 24

**Plaintiff's Notice of Revised Motion / Revised Motion for Preliminary Approval of Class Action Settlement**

**Case No. 3:14-cv-01347**

**Table of Authorities**

<u>Cases</u>

<u>Alberto v. GMRI, Inc.,</u>

    252 F.R.D. 652 (E.D. Cal. 2008) ............................................................. 18

<u>Amchem Products, Inc. v. Windsor,</u>

    521 U.S. 591 (1997)................................................................. passim

<u>Arnold v. United Artists Theatre, Circuit, Inc.,</u>

    158 F.R.d. 439 (N.D. Cal. 1994)............................................................. 13

<u>Breeden v. Benchmark Lending Group, Inc.,</u>

    229 F.R.D. 623 (N.D. Cal. 2005)............................................................. 11

<u>Califano v. Yamasaki,</u>

    442 U.S. 682 (1979)............................................................................. 12

<u>Carter v. Anderson Mech., LP,</u>

    2010 WL 1946784 (C.D. Cal. May 11, 2010) .......................................... 18

<u>Chun-Hoon v. McKee Foods Corp.,</u>

    716 F. Supp. 2d 848 (N.D. Cal. 2010) .................................................... 18

<u>Churchill Village,</u>

    361 F.3d at 575 ................................................................................. 23

<u>Class Plaintiffs v. City of Seattle,</u>

    955 F.2d 1268 (9th Cir. 1992) ........................................................... 9, 10

<u>Cohorst v. BRE Properties, Inc.,</u>

    2011 WL 3489781  (S.D. Cal. July 19, 2011) ......................................... 23

<u>Eisen v. Carlisle & Jacqueline,</u>

    417 U.S. 156 (1974)............................................................................. 23

<u>Gautreaux v. Pierce,</u>

    690 F.2d 616 (7th Cir.1982) ........................................................... 10, 18

**Plaintiff's Notice of Revised Motion / Revised Motion for Preliminary Approval of Class Action Settlement**

**Case No. 3:14-cv-01347**

Gen. Tel. Co. of Southwest v. Falcon,
   457 U.S. 147 (1982) ................................................................ 12

Hanlon v. Chrysler Corp.,
   150 F.3d 1011 (9th Cir. 1998) ................................... 9, 17, 18

Hanon v. Dataproducts Corp.,
   976 F.2d 497 (9th Cir. 1992) ................................................ 12

Hodges v. Akeena Solar Inc.,
   274 F.R.D. 259 (N.D. Cal. 2011) ........................................ 14

Horton v. Leading Edge Marketing Inc.,
   2007 WL 2472046  (D. Co. Aug. 28, 2007) ....................... 23

In re AT&T Mobility Wireless Data Services Sales Tax Litigation,
   789 F. Supp. 2d 935 (N.D. Ill 2011) ................................... 23

In re Corrugated Container Antitrust Litig.,
   643 F.2d 195 (5th Cir. 1981) ................................................ 16

In re Heritage Bond Litig.,
   2004 WL 1638201 (C.D. Cal Jul. 12, 2004) ....................... 12

In re Heritage Bond Litig.,
   546 F.3d 667 (9th Cir. 2008) ............................................... 16

In re Heritage Bond Litigation,
   2005 WL 1594403 (C.D. Ca. Jun. 10, 2005) .................. 9, 16

In re Syncor ERISA Litig.,
   516 F.3d 1095 (9th Cir. 2008) ............................................ 16

In re Tableware Antitrust Litig., ...................................................
   2007 WL 1100314 (N.D. Cal. Apr. 12, 2007)……………………………………..22

In re Wells Fargo Home Mortgage Overtime Pay Litig.,
   527 F. Supp. 2d 1053 (N.D. Cal. 2007) .............................. 14

**Plaintiff's Notice of Revised Motion / Revised Motion for Preliminary Approval of Class Action Settlement**

**Case No. 3:14-cv-01347**

In re: Visa Check/MasterMoney Antitrust Litigation,

    2002 WL 31528478 (E.D. NY June 21, 2002) ........................................................ 23

League of United Latin Am. Citizens v. Wilson,

    131 F.3d 1297 (9th Cir. 1997) .......................................................................... 21

Mace v. Van Ru Credit Corp.,

    109 F.3d 338 (1997) ...................................................................................... 14

Negrete v. Allianz Life Ins. Co. of North America,

    523 F.3d 1091 (9th Cir. 2008) .......................................................................... 21

O'Donovan v. CashCall, Inc.,

    278 F.R.D. 479 (N.D. Cal. 2011) ...................................................................... 11

Officers for Justice v. Civil Serv. Comm'n of San Francisco,

    688 F.2d 615 (9th Cir 1982) ............................................................................ 17

Phillips Petroleum Co. v. Shutts,

    472 U.S. 797 (1985) ...................................................................................... 21

Riker v. Gibbons,

    2010 WL 4366012 (D. Nev. Oct. 28, 2010) ............................................................ 9

Rutter & Wilbanks Corp. v. Shell Oil Co.,

    314 F.3d 1180 (10th Cir. 2002) ........................................................................ 21

Sandoval v. Tharaldson Employee Management,

    2009 WL 3877203 ........................................................................................ 18

Satchell v. Fed. Exp. Corp.,

    No. C03-2659 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)........................................ 17

Sullivan v. Chase Inv. Servs., Inc.,

    79 F.R.D. 246 (N.D. Cal. 1978)........................................................................ 11

Valentino v. Carter-Wallace, Inc.,

    97 F.3d 1227 (9th Cir. 1996) .......................................................................... 15

**Plaintiff's Notice of Revised Motion / Revised Motion for Preliminary Approval of Class Action Settlement**

**Case No. 3:14-cv-01347**

Wal-Mart Stores, Inc. v. Dukes,

    131 S.Ct. 2541(2011) ................................................................................ 11

Yaegley v. Wells Fargo & Co.,

    2008 WL 171083 (N.D. Cal. Jan. 18, 2008), ............................................ 20

**Statutes**

47 U.S.C. § 227 ........................................................................................... iii, 22

**Rules**

Fed. R. Civ. P. 23 ..................................................................................... passim

Fed. R. Civ. P. 23(e) .................................................................................. v, 8, 16

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv) ................................................................. 15

Fed. R. Civ. P. 23(g)(1)(B) ............................................................................. 15

Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) ................................ 3

Rule 23(a) ................................................................................................... 9, 11

Rule 23(a) and (b)(3) ....................................................................................... 9

Rule 23(a)(1) .................................................................................................. 10

Rule 23(a)(2) .................................................................................................. 10

Rule 23(a)(3) .................................................................................................. 11

Rule 23(a)(4) .................................................................................................. 12

Rule 23(b) ........................................................................................................ 9

Rule 23(b)(2) .................................................................................................. 19

Rule 23(b)(3) ................................................................................... 9, 13, 14, 19

Rule 23(c)(3)(B) ............................................................................................. 24

Rule 23(e)(1) of the Federal Rules of Civil Procedure .................................. 21

Rules 23(c)(2)(B) and 23(e)(1) ....................................................................... 23

**Plaintiff's Notice of Revised Motion / Revised Motion for Preliminary Approval of Class Action Settlement**

**Case No. 3:14-cv-01347**

**Other Authorities**

1 Newberg on Class Actions § 3:54.................................................................. 12

1 Newberg on Class Actions § 4:25.................................................................. 13

4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11:42 (4th ed. 2002) ........... 9

6 Newberg on Class Actions § 18:9.................................................................. 11

Annotated Manual for Complex Litigation at § 21.632................................................ 16

Manual for Complex Litigation (Fourth) § 21.632................................................... 9

**Plaintiff's Notice of Revised Motion / Revised Motion for Preliminary Approval of Class Action Settlement**

**Case No. 3:14-cv-01347**

## I. INTRODUCTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff, John Browning, hereby moves for an Order preliminarily approving the Settlement reached in this case. This is Plaintiff's revised request for Court approval of the Settlement he has entered into with Defendants. Plaintiff initially requested that Judge Cooke in the Southern District of Florida review and approve the parties' Settlement Agreement. However, following a motion to intervene or dismiss Plaintiff's action filed by counsel for several individuals with cases against the same Defendants pending in this Court, Judge Cooke transferred this action to this Court for consideration of the motion for preliminary approval. (*Browning* Doc. Nos. 34, 44, 45, 46, 61).

The underlying dispute between Plaintiff and Defendants concerns TracFone's "no-contract" cell phone services with "unlimited" data plans sold under the Straight Talk, Simple Mobile, Net10 and Telcel America brand names. Plaintiff's action focuses on allegations that the "unlimited" data plans offered by TracFone under these brand names were not actually unlimited. Instead, according to Plaintiff, these "unlimited" plans were subject to a number of limitations that were either not disclosed, or were not adequately disclosed to consumers, resulting in termination of all cell phone services, suspension of data services or throttling of data services.

The parties' fundamentally disagree regarding the propriety of TracFone's termination, suspension or throttling of Class Members' cell phone services. Plaintiff's complaint filed in the Southern District of Florida asserted that TracFone's actions were unlawful and deceptive, whereas TracFone maintained that its actions were lawful, appropriate and consistent with industry standards. TracFone believes that Plaintiff's and Class Members' claims could not be certified under Federal Rule of Civil Procedure 23 for at least two independent reasons: 1) Plaintiff's claims were subject to binding individual arbitration; and 2) even if Plaintiff's claims were not subject to arbitration, the presence of individualized facts necessary to Plaintiff's claims

and to Defendants' defenses would defeat certification. The ultimate success of the litigation would have required Plaintiff to prevail, in whole or in part, on all of these intensely contested issues. Indeed, TracFone's success on any of these issues could have resulted in severely limited relief, or no relief at all, to the Class.

Plaintiff and his counsel, based upon their evaluation of the facts, applicable law, and their recognition of the substantial risk and expense of continued litigation, submit that the proposed settlement is an excellent result and is in the best interests of the Settlement Class. The proposed settlement was negotiated at arm's length by highly skilled and experienced counsel for all parties, following extensive factual and legal investigation and substantial negotiations, including two full days of in-person mediations and several follow up negotiations to complete the terms of the settlement. Given the myriad of risks associated with the class claims, coupled with the great benefit to the Class achieved by the Settlement, the Settlement should not be seen as anything other than a fair compromise of competing interests, which is in the best interest of the Class. Accordingly, Plaintiff respectfully moves for preliminary approval of the Settlement. Plaintiff also respectfully requests that the Court approve the proposed forms of notice and claim form.

## II. EVENTS LEADING TO SETTLEMENT

Plaintiff John Browning commenced this putative class action on August 12, 2013 by the filing of a complaint against TracFone Wireless, Inc. and Wal-Mart Stores, Inc. (*Browning* Doc. No. 1). The gravamen of this complaint was that Defendants engaged in deceptive and unfair trade practices by marketing their "no-contract" cell phone services under the "Straight Talk" brand as being "unlimited" when in fact those services were subject to a number of limiting conditions that were not disclosed or were inadequately disclosed to Plaintiff and Class Members. Plaintiff alleged that this conduct harmed him and other proposed class members because they paid Defendants for an unlimited data plan, based upon Defendants uniform

representations that the service plans purchased included unlimited data, and Defendants deprived them of access to unlimited data by virtue of terminating all of their services, suspending their data services, or throttling their data services. Plaintiff, on behalf of himself and all others similarly situated, brought claims against Defendants for violation of the Florida Deceptive and Unfair Trade Practices Act, Breach of Express Warranty and Unjust Enrichment.

On October 4, 2013, Defendants moved to dismiss the Complaint and also moved to compel arbitration of Plaintiff's individual claims. According to Defendants, Plaintiff agreed to arbitrate his individual claims based upon the terms of service included within the package for Plaintiff's TracFone branded phone and on TracFone's website, which included an arbitration clause and a provision that barred Browning from pursuing a class action. (*Browning* Doc. No. 15). Defendants also sought dismissal of the Complaint on the basis that it failed to state a cause of action.

On November 11, 2013, Plaintiff sought leave to file an Amended Complaint, attaching to his request a copy of the proposed amended pleading. (*Browning* Doc. No. 23). The Florida District Court granted the Motion for Leave to File an Amended Complaint on November 13, 2013, directing Plaintiff to separately file the proposed pleading within five days. Accordingly, on November 18, 2013, Plaintiff filed and served his Amended Complaint (*Browning* Doc. No. 28). As with the initial complaint, the Amended Complaint focuses on Defendants' deceptive and unfair trade practices in the marketing and sale of a number of TracFone branded cell phone service plans as providing "unlimited" data when, in reality, each of those plans are subject to a number of different limiting conditions that were not disclosed or were inadequately disclosed to Plaintiff and Class Members. The Amended Complaint seeks monetary, declaratory and injunctive relief on behalf of Plaintiff, individually, and a putative class of purchasers of Defendants' "unlimited" Straight Talk, Net10, TelCel America, and Simple Mobile branded cell phone service plans throughout the United States. In the Amended Complaint, Plaintiff seeks to

certify a nationwide class of persons pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3). Like the initial complaint, the Amended Complaint included claims against Defendants for violation of the Florida Deceptive and Unfair Trade Practices Act, Breach of Express Warranty and Unjust Enrichment, based upon Defendants' uniform marketing campaign for "unlimited" service plans offered under the Straight Talk, Net10, TelCel America, and Simple Mobile brands.

On December 10, 2013, Defendants renewed their motion to stay or dismiss the case on the basis of the arbitration provision referenced above, and also sought to dismiss the Amended Complaint on the basis that it failed to state a cause of action. (*Browning* Doc. No. 40).

After Defendants initially sought to compel arbitration and to bar Plaintiff from bringing any class action claims, the parties began to explore the possibility of resolution on a class wide basis. These discussions were prompted by the parties' desire to avoid the expense, uncertainties and burden of protracted litigation, to avoid the significant risk associated with the arbitration clause and the class action ban at issue, and to bring finality to all claims or causes of actions that were, or could have been, asserted against Defendants relating to their marketing and sale of "unlimited" cell phone service plans.

In conjunction with these settlement discussions, the Plaintiff took a number of steps, including propounding formal discovery requests, which resulted in Defendants production of more than a thousand documents relating to the allegations in the Amended Complaint, as well as Defendants' verified written responses to interrogatories. In addition, Plaintiff took the deposition of Karen Levine, the Senior Vice President of Finance at TracFone, pursuant to a 30(b)(6) deposition notice served on Defendant TracFone.

Along with these discovery efforts, the parties jointly retained mediator Rodney Max, a highly skilled and experienced mediator with a proven track record for resolving complex class action litigation, to mediate their settlement discussions. The parties conducted two, full day, in-

person mediation sessions to explore settlement. The initial, full-day mediation session was held on December 2, 2013. The second, full-day mediation was held on December 16, 2013.

During these mediation sessions, the parties exchanged offers and counteroffers and negotiated the points of each vigorously. The settlement was negotiated on an arm's length and non-collusive basis among counsel who are experienced in complex class actions, and are familiar with the risks attendant to class action litigation, which were enhanced by the arbitration clause and class ban at issue in this case. The mediation sessions, which included interim follow up discussions with the help of Mr. Max, resulted in the settlement now presently before this Court for consideration. Critically, the Parties reached agreement on all material terms of the settlement prior to negotiating the entitlement to or amount of an attorneys' fee award or an incentive award for the class representative. The mediator has submitted a declaration in support of the settlement. *See Declaration of Rodney Max*, attached hereto as Exhibit H.

Following these mediation sessions, the parties, through their counsel, prepared a term sheet which memorialized the terms of their agreement reached during mediation. This term sheet was filed with the Court on December 23, 2013. (Doc. No. 44). Thereafter, the parties turned to the task of negotiating additional details necessary to implement the substantive terms outlined in the parties' term sheet, culminating in the finalized Settlement Agreement, attached hereto as Exhibit A.

Plaintiff requests that this Court review and preliminarily approve this Settlement Agreement.

### III.     SUMMARY OF THE PROPOSED SETTLEMENT TERMS

#### A.     The Proposed Settlement Class

Pursuant to the Settlement Agreement, the parties have agreed to the following Settlement Class:

> All consumers in the United States who purchased and activated a
> TracFone cell phone or SIM card and/or Activation Kit or Activation

Code, including without limitation any Straight Talk, Simple Mobile (including customers both before and after TracFone's acquisition of Simple Mobile on or about June 18, 2012) NET10 and/or Telcel America (collectively "TracFone" branded cell phone, SIM card and/or Activation Kit or Activation Code) and purchased and redeemed an unlimited service plan and whose data usage was Throttled, or Data Usage Suspended or Services Terminated by TracFone. Defendants are excluded from the Class as well as any entity in which either of the Defendants has a controlling interest, along with Defendants' legal representatives, officers, directors, assignees and successors. Also excluded from the Class is any judge to whom this action is assigned, together with any relative of such judge, and the spouse of any such persons.

## B.    Substantive Relief Provided to Plaintiff and Class Members

The Settlement Agreement provides for both monetary and non-monetary relief for the benefit of Plaintiff and the Settlement Class.   The monetary provisions of the Settlement Agreement fall within three broad categories based upon the type of harm suffered by Settlement Class Members.   The first category consists of Class Members who had their data usage throttled, meaning that those Class Members would have likely experienced data access rates lower than what they would have otherwise experienced given all other factors such as signal quality, cell tower congestion, and overall network usage.  Class Members in this category would have experienced no interruption of the talk and text features of their cell phones and still would have had the ability to access data on their cell phones, albeit in most instances at a rate slower than the best available.  The next category is comprised of Class Members who had their cell phone service plans suspended, which means that those Class Members would have lost all data access on their phones during the period of suspension.   As with the first category, Class Members falling in this second category still would have been able to use the talk and text features of their phones during the time of any suspension.  The final category includes all Class Members whose cell phone service plans were terminated, meaning that these Class Members would have been unable to use any features of their phones, including talk, text or data, from the point of termination.

For Class Members experiencing throttling of data usage on Straight Talk, Net10, or Telcel America branded plans prior to September 27, 2013, the Settlement Agreement provides a monetary benefit of $5.00 based upon a presumption that a Class Member who experienced throttling did so for two months. For Class Members experiencing throttling of data usage on Straight Talk, Net10, or Telcel America branded plans between September 27, 2013 and February 4, 2014, consistent with new plan disclosures implemented as of that date, the Settlement Agreement provides a monetary benefit of $1.00 per Class Member. The same monetary relief will be provided to Class Members who purchased Simple Mobile unlimited cell phone service plans except that Class Members experiencing throttling prior to November 1, 2012, shall be entitled to the $5.00 monetary benefit, while those experiencing throttling between November 1, 2012 and February 4, 2014, consistent with new plan disclosures that were implemented as of that date, will receive $1.00. These different transition dates for the monetary relief correspond to when Defendants began providing more specific disclosures regarding their unlimited cell phone service plans.

Class Members who had their data usage suspended are entitled to $10.00, again based upon a presumption that they experienced two months of suspension. And finally, Class Members who had their accounts terminated are entitled to direct cash compensation in the amount of $45.00. Additionally, Class Members falling into this category are entitled to an extra payment in the amount of $20.00 for the return of their TracFone branded handset to TracFone which the Class Member had purchased and used at the time services were terminated, but had not used with TracFone or any other provider after such service termination.

No matter which category a class member falls into, Class Members will be required to complete a claim form in order to be eligible for monetary relief. In addition, Class Members falling into more than one category are eligible to be paid for only one category.

With respect to non-monetary relief, TracFone has revised its marketing materials for the Straight Talk, Net 10 and Telcel America brands to specifically inform customers of the levels at which their data services is subject to throttling. TracFone had already made similar changes to its disclosures for the Simple Mobile brand prior to the present lawsuit. This revised information is also included in TracFone's current Terms and Conditions of Service. In addition, TracFone has implemented the following changes with respect to its policies regarding data throttling, data suspension and service termination of customers: (1) TracFone has modified its Terms and Conditions of Service to suggest that all customers should use Wi-Fi wherever possible when using data services, as the use of Wi-Fi does not count against data usage; (2) TracFone has modified its activation instructions to again remind customers to review the Terms and Conditions of Service prior to activating their handset; and, (3) TracFone has taken steps to advise customers of free third-party services, such as mobile phone applications through which customers can track their data usage. *See* Declaration of J. Andrew Meyer, attached hereto as Exhibit I, and the accompanying Excerpts of April 24, 2014, Deposition Karen Levine, Senior Vice President for Finance, attached hereto as Exhibit I-4.

## C. Other Key Provisions

Defendants will pay for the costs of claims administration and class notice. In addition, Defendants have agreed to pay a court approved service award to Plaintiff Browning of up to $2,000.00 and a court approved attorneys' fees and costs award of up to $1,125,000.00.

## IV. THE COURT SHOULD PRELIMINARILY CERTIFY THE PROPOSED SETTLEMENT CLASS AS THE REQUIREMENTS OF RULE 23 HAVE BEEN SATISFIED.

Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive Court approval. The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not the product of collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). In determining

whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Heritage Bond Litigation,* 2005 WL 1594403, *2 (C.D. Ca. Jun. 10, 2005), citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1275 (9th Cir. 1992). "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Riker v. Gibbons*, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) (citing 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:42 (4th ed. 2002)). Indeed, "'[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *In re Heritage Bond Litigation*, 2005 WL 1594403, at *6 (citation omitted).

For purposes of conditionally certifying the Rule 23(b)(3) Settlement Class sought by the Parties, the Manual for Complex Litigation (Fourth) § 21.632 advises:

> If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b).

This comports with the Supreme Court's holding in *Amchem* that "[s]ettlement is relevant to a class certification," but the requirements of Rule 23(a) and (b)(3) must still be met. *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 619-20 (1997). When the Court is "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." *Id.* At the preliminary approval stage, the Court need only "determine whether the proposed settlement is within the range of possible approval." *Gautreaux v. Pierce,* 690 F.2d 616, 621 n. 3 (7th Cir.1982). Ultimately, a class action should be approved if "it is fundamentally fair, adequate and reasonable." *Class Plaintiffs v. City of Seattle*, 955 F.2d at 1276

In this case, all of the requirements for Rule 23(a) and Rule 23(b)(3) have been met:

**Numerosity.** From information provided to Plaintiff in response to his discovery requests, there are well over 4 million class members. With respect to the Straight Talk brand, TracFone's books and records reflect that over 19.2 million unlimited cell phone plans had been purchased by consumers through September 27, 2013. *See* Declaration of J. Andrew Meyer, attached hereto as Exhibit I, and the accompanying Verified Written Responses of Karen Levine, Senior Vice President for Finance, attached hereto as Exhibit I-2. Similarly, TracFone's books and records indicate that there were 6.5 million unlimited cell phone plans sold under the Net10 brand through September 27, 2013. TracFone's Telcel America branded unlimited plans, which had the lowest sales volume of any of TracFone's brands, were purchased by some 135,000 consumers. *Id.* Deposition testimony of Ms. Levine further clarified that of these many millions of "unique customers," some 3.4 million had their data plans throttled at least once prior to September of 2013 and over 650,000 had their data plans throttled, consistent with the new plan disclosures, at least once since that time. *See* Declaration of J. Andrew Meyer, attached hereto as Exhibit I, and the accompanying Excerpts of December 12, 2013, Deposition of Karen Levine, Senior Vice President for Finance, attached hereto as Exhibit I-2. Ms. Levine also testified that some 350,000 customers had their accounts suspended for violations of Defendants' date usage policies, and 15,000 customers had their accounts terminated. *Id.* Under these circumstances, the numerosity factor specified in Rule 23(a)(1) is easily satisfied. *See Breeden v. Benchmark Lending Group, Inc.,* 229 F.R.D. 623, 628 (N.D. Cal. 2005) (236 potential class members sufficient to satisfy numerosity requirement); *Sullivan v. Chase Inv. Servs., Inc.*, 79 F.R.D. 246, 257 (N.D. Cal. 1978) (a class consisting of 1,000 members satisfies numerosity).

**Commonality.** The commonality requirement of Rule 23(a)(2) is met in this case. In *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541(2011), the Court opined that in order to support a finding of commonality, the plaintiff's claims necessarily depend on a common contention and

that common contention, "must be of such a nature that is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 2551. "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* Here, Plaintiff's Amended Complaint presents numerous questions of fact and law common to the Class, including, among others:

    a.  Whether Defendants' marketing of TracFone cell phones, SIM cards and service plans as requiring "no-contract" and providing "unlimited" was a deceptive and unfair trade practice under Florida law when TracFone's terms of service purported to limit the data usage available under those plans and where TracFone imposed undisclosed data usage thresholds on those plans;

    b.  Whether the arbitration provisions contained in TracFone's terms of service and website are valid and enforceable, particularly given Defendants' representations that their SIM cards and service plans required "no-contract;" and,

    c.  Whether Defendants' policies and procedures regarding data usage for its "unlimited" plans were uniformly applied to Plaintiff and Class Members as alleged in the Amended Complaint and, if so, what those policies and procedures were;

This non-exhaustive list of common issues is more than sufficient to meet the commonality requirement of Rule 23(a). *See Califano v. Yamasaki*, 442 U.S. 682, 701 (1979) (class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and they "turn on questions of law applicable in the same manner to each member of the class"); *O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 489 (N.D. Cal. 2011) (finding that "even a single common question is sufficient" to satisfy the commonality requirement.).

**Typicality.** The typicality requirement of Rule 23(a)(3) "refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." 6 Newberg on Class Actions § 18:9 (citations omitted). In other words, the court must determine "whether other [class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). If litigating the named plaintiff's claims will advance the interests of absent class members, then the claims are typical. *See, e.g., Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156-57 (1982). In order to establish typicality, "[t]he claims of the named plaintiffs need not be identical to the claims of the class; they need only arise from the same remedial and legal theories." *Arnold v. United Artists Theatre, Circuit, Inc.*, 158 F.R.d. 439, 449 (N.D. Cal. 1994); *In re Heritage Bond Litig.*, 2004 WL 1638201, at *4, 7 (C.D. Cal Jul. 12, 2004) (finding "if the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of the factual differences" and "the typicality requirement is not demanding"). Here, the claims of Plaintiff and each Class Member arise from Defendants' failure to provide "unlimited" cell phone data service as promised in their uniform marketing materials. Based upon Plaintiff's theory of liability, Plaintiff and each member of the Class will have had their data usage curtailed and each will have lost the full benefit of their bargain because of the same alleged misconduct. All of Plaintiff's and Class Members' claims arise from the same nucleus of facts and all hinge upon the same theory of liability. Accordingly, the typicality prong is satisfied here.

**Adequacy of Representation.** Rule 23(a)(4) requires that the named representatives "not possess interests which are antagonistic to the interests of the class." 1 Newberg on Class Actions § 3:54. Second, the named representative's counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *Amchem*, 521 U.S. at 625-26. At the

preliminary stage of the approval process, there is sufficient evidence to support a finding that these requirements have been satisfied. Mr. Browning is a member of the proposed Settlement Class and like the Class Members he seeks to represent, he believes he did not receive "unlimited" data access on his "unlimited" TracFone cell phone plans due to undisclosed or inadequately disclosed policies and practices of Defendants. *See* Declaration of John Browning, attached hereto as Exhibit J. Moreover, Mr. Browning does not possess any interests antagonistic to the Class, and he understands his fiduciary obligations as a class representative. *Id.* Mr. Browning has faithfully discharged his fiduciary obligations to date and remains willing and able to do so going forward. Mr. Browning's declaration also shows he has acted in the best interests of the Class from the outset of the litigation and has remained fully informed regarding the progress of the case and settlement negotiations. *Id.* As such, the Court should find Mr. Browning is an adequate representative of the proposed Settlement Class.

In addition, proposed Settlement Co-Lead Class Counsel are experienced in class action litigation and have submitted declarations establishing their skills and experience in handling class litigation around the country and in this District. *See* Declaration of John A. Yanchunis, attached hereto as Exhibit K, and Declaration of J. Andrew Meyer, attached hereto as Exhibit I. In particular, proposed Co-Lead Class Counsel have litigated numerous cases involving consumer protection and alleged violations of unfair and deceptive acts and practices and are intimately knowledgeable with the law in this field. They have represented Mr. Browning and putative Class Members vigorously and zealously to date, and are ready, willing and able to do so should the Court certify a settlement class. Therefore, the Court should find that proposed Co-Lead Class Counsel will fairly and adequately represent the class.

**Predominance.** For purposes of satisfying Rule 23(b)(3)'s requirements, "the predominance test asks whether a class action suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit." 1 Newberg on Class

Actions § 4:25; *see also Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed class members are sufficiently cohesive to warrant adjudication by representation). When evaluating Rule 23(b)(3) predominance with respect to a settlement class, individualized factual issues and legal variation among the laws of the states which implicate the manageability aspect of predominance are not considered. *Amchem*, supra, 521 U.S. at 623.

In the case, and in the context of the proposed settlement, common questions of fact and law predominate over questions of fact and law affecting only individual members of the Class. Defendants are alleged to have engaged in a uniform, nationwide marketing campaign touting two major features of their cell phone service plans: first, that no "contract" was required to use Defendants' plans and second, that the data usage allowed on such plans would be "unlimited." In reality, according to Plaintiff, Defendants imposed a number of limiting conditions on the data usage of its service plans, with some of those limitations being set forth in a purported terms of service "contract" while other limitations were never disclosed. Under Plaintiff's theory of the case, Plaintiff and all other Class Members would have been subject to the same marketing, which was a key point of differentiation for Defendants' products from other competing cell phone service plans, and Plaintiff and all Class Members would have been injured by the same data usage policies and procedures which "limited" their data usage. In proving his own case under this theory of liability, Plaintiff would have to address and answer the very same factual and legal questions that would need to be addressed and answered in every other class member's case brought under this same theory. Accordingly, the commonality element of Rule 23(b)(3) has been met here.

**Superiority.** Rule 23(b)(3) also requires that the class action device be superior to other methods of adjudication. The inquiry into whether a class action is a superior method for a particular case focuses on "increased efficiency and economy." *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1068-69 (N.D. Cal. 2007), quoting

14

Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (stating "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation."); *Hodges v. Akeena Solar Inc.*, 274 F.R.D. 259, 271 (N.D. Cal. 2011) (finding that where a class includes thousands of members, "it is superior to concentrate claims through a class action in a single forum."); *Id.* (citation omitted). *Amchem,* 521 U.S. at 617, quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (1997) (stating that the "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights").  Here, absent a class action, Plaintiff and Class Members would find the cost of litigating their claims to be prohibitive, particularly given that the average cost of the unlimited plans at issue in the case is only $45.  Moreover, multiple individual actions would be judicially inefficient, particularly given the large number of class members and the common questions of law and fact that would predominate amount each of those cases.  And, as noted earlier, any difficulties of management of the class need not be considered in this settlement context.  *Amchem*, 521 U.S. at 620.  Accordingly, a class action is superior to other means of resolution of the present matter.

### V.     PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS COUNSEL FOR THE PROPOSED SETTLEMENT CLASS.

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  In making this determination, the Court is to consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed above, proposed Co-Lead Counsel have extensive experience in prosecuting class actions and other complex litigation of a similar nature, scope and complexity as the

**Plaintiff's Notice of Revised Motion / Revised Motion for Preliminary Approval of Class Action Settlement**

**Case No. 3:14-cv-01347**

present case.  *See* Declaration of John A. Yanchunis, attached hereto as Exhibit K and Declaration of J. Andrew Meyer, attached hereto as Exhibit I.  Furthermore, proposed Co-Lead Counsel have diligently investigated and prosecuted the claims in this matter, including reviewing over a thousand pages of documents produced by Defendants as well as preparing for and taking the deposition of a corporate designee of TracFone.  Both proposed Co-Lead Counsel and their law firm have dedicated substantial resources to this case, and will continue to do so if appointed as Class Counsel.  Finally, proposed Co-Lead Counsel have successfully negotiated a settlement of this matter which provides significant benefits to the Settlement Class.  Accordingly, the Court should appoint John A. Yanchunis and J. Andrew Meyer as Co-Lead Counsel.

### VI.    THE TERMS OF THE PARTIES' SETTLEMENT AGREEMENT ARE IN THE BEST INTEREST OF THE SETTLEMENT CLASS, AND ARE FAIR, REASONABLE AND ADEQUATE.

Federal Rule of Civil Procedure 23(e) requires court approval for any compromises of a class action.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997).  In determining whether to approve the Settlement, the Court should be guided by the strong judicial policy favoring pretrial settlement of complex class action lawsuits.  *In re Heritage Bond Litigation*, 2005 WL 1594403, at *2.  Although class action settlements require court approval, such approval is committed to the sound discretion of the District Court.  *Hanlon*, 150 F.3d at 1026.

"The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). In order to grant approval of a class action settlement, the court must find that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008).  Generally, the district court's review of a class action settlement is "extremely limited." *Hanlon*, 150 F.3d at 1026.

In considering a proposed settlement of a class action, federal courts normally follow a two-step process, the first step relating to preliminary approval and the second step relating to final approval. *Annotated Manual for Complex Litigation* at § 21.632. "At the preliminary approval stage, a court determines whether a proposed settlement is "within the range of possible approval" and whether or not notice should be sent to class members." *Sandoval v. Tharaldson Employee Management*, 2009 WL 3877203 at, *2 (C.D. Cal. Nov. 17, 2009), citing *In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 205 (5th Cir. 1981). At the preliminary approval stage, the court need only "determine whether the proposed settlement is within the range of possible approval." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008), citing *Gautreaux*, 690 F.2d at 621 n.3. The Court's review at the preliminary approval stage should be "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Hanlon*, 150 F.3d at 1027, citing *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir 1982).

In the present case, the Parties' Settlement Agreement more than meets the threshold for preliminary approval. To begin with, the Settlement Agreement is not the product of fraud, collusion or overreaching by either of the Parties. The Plaintiff and his attorneys arrived at an agreement in principal with TracFone and Wal-Mart only after hard-fought negotiations and two separate, full-day mediation sessions with Rodney Max, a highly skilled and experienced mediator. *See Chun-Hoon v. McKee Foods Corp*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010); *see also Satchell v. Fed. Exp. Corp.*, No. C03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Carter v. Anderson Mech., LP*, 2010 WL 1946784, at *7 (C.D. Cal. May 11, 2010) (citing *Satchell).* The Parties did not negotiate the terms of any attorneys'

fee or incentive award until after all material terms of the settlement agreement were agreed upon. An initial term sheet arrived at the conclusion of the second day of mediation was subsequently memorialized in the Settlement Agreement, attached hereto as Exhibit A. As detailed by the declaration of the mediator, the Settlement Agreement was negotiated at arms-length, with no collusiveness between the parties or their respective counsel. In addition, Plaintiffs' Counsel possessed adequate information concerning the strengths and weaknesses of the litigation against TracFone and Wal-Mart after focused discovery and information sharing between the parties, including a deposition of a TracFone corporate representative and verified written responses from TracFone. From this information, Plaintiff's Counsel was able to accurately assess the likelihood of success at trial and the range of possible recovery. Similarly, Plaintiff's counsel was more than adequately informed so as to be able to assess the reasonableness of the present settlement.

Turning to the substance of the proposed Settlement Agreement, it provides meaningful and appropriate relief to the proposed Settlement Class Members, both in terms of monetary and non-monetary benefits. With respect to monetary relief, Class Members are entitled to differing levels of compensation depending upon whether they were subjected to throttling, suspension or termination of their cell phone plans, and when Defendants enhanced their disclosures to consumers. As for non-monetary relief, the Settlement Agreement outlines several practice changes that the Defendants have since implemented with respect to their advertising and marketing of their unlimited cell phone service plans to consumers as well as certain steps the Defendants have since taken in an effort to ameliorate any potential harm Settlement Class Members may suffer by virtue of misunderstanding the features of the products sold by Defendants.

Given that the identity of Class Members is not known, Settlement Class Members will have to file a claim in order to receive this monetary payment. The Parties have created a claims

process that is simple and convenient and tailored to capture as many claims as possible, while at the same time discouraging the submission of fraudulent claims. Thus, Settlement Class Members stand to benefit in terms of being able to make better informed purchasing decisions going forward and receiving some monetary recompense for any damages they may have suffered in the past.

In addition to the monetary and non-monetary relief just discussed, the Defendant has also agreed to pay the costs of administration and of publication notice. Defendant has further agreed that notice to the Class will be provided in both English and Spanish. These additional items bring tangible benefits to the proposed Settlement Class, as well.

Given the hurdles Plaintiff would have to overcome if they were to litigate this case to verdict and the benefits provided by the Settlement, approving the Settlement Agreement is in the best interests of the proposed Settlement Class. Unquestionably, Plaintiff's and Class Members' claims and defenses in this action are replete with risks and uncertainty. At the outset, continued litigation of this matter would require the Court to resolve two separate threshold questions concerning the viability of certifying the proposed Class. First, the Court would have to decide the question of the arbitrability of the Plaintiff's claims. Second, should this Court find that Plaintiff's claims are not subject to arbitration, the Court would have to turn to the question of class certification and Defendants' contention that individualized factual inquiries and legal variation among the laws of the states would preclude class certification. These two inquiries alone pose significant risk to any recovery by Plaintiff and Class Members. Beyond these two threshold issues, thorny questions of liability would need to be addressed, including but not limited to, the various substantive arguments and affirmative defenses asserted by Defendants.

Defendants have previously filed their motion to compel arbitration, so the issues raised by that motion need not be repeated here. As for the question of class certification, Defendants maintain that individualized factual issues material to both liability elements and affirmative

defenses would preclude plaintiff from establishing predominance under Rule 23(b)(3) or cohesiveness under Rule 23(b)(2). These individualized issues include, according to Defendants, the necessity of individualized hearings to determine: 1) whether any putative class member violated the terms and conditions of their contract, as many Class Members have admitted to service representatives that they did so violate; 2) whether throttling experienced by any settlement Class Member stemmed from a carrier action or from high traffic overloads, both of which are independent of any actions taken by Defendants; 3) whether any Class Member ratified Defendants' actions, or waived their right to or is stopped from challenging Defendants actions; and, 4) whether any Class Member has been damaged and, if so, to what extent. Defendants also maintain that legal variation among the laws of the States material to the claims asserted would preclude class certification, at least in a litigated context.

Moreover, with respect to the merits, Defendants maintain that they did adequately disclose the terms of service governing their unlimited service plans to Plaintiff and Class Members and at no time did they advertise or guarantee the speeds at which they would deliver data service. Under Defendants' view, they did offer "unlimited" data but simply reduced the speed at which the data could be accessed. Similarly, Defendants maintain that Plaintiff and Class Members suffered no cognizable damages because any data usage limitations were imposed only as a consequence of customers using their cell phones in a manner prohibited by the terms of service of their respective service plans. Also, Defendants point out that, other than for those with terminated accounts, Class Members were always able to use the unlimited talk and text features of their plans even if their data services were throttled or suspended.

In light of these difficult issues, which presented significant risk and uncertainties for the class, the monetary benefits of the settlement are appropriate even though they may represent only a fraction of the full potential litigation recovery. *See Yaegley v. Wells Fargo & Co.*, 2008 WL 171083, at *3 (N.D. Cal. Jan. 18, 2008), rev'd on other grounds, 365 F. App'x. 886 (9th Cir.

2010).  Moreover, when the monetary benefits are coupled with the other benefits of the settlement, Class Members will receive more than adequate relief so as to render the proposed settlement fair, reasonable and adequate.

Somewhat unusually, an "objection" was previously filed while this action was pending in the Southern District of Florida regarding the proposed settlement terms as outlined by the "term sheet" filed by the parties in conjunction with their notice of settlement.  This "objection" was filed on behalf of seven potential settlement class members who previously brought similar class action cases in this Court ('previously filed actions').  Among other items, these individuals, through their counsel, incorrectly argued that the present settlement was negotiated without the benefit of discovery.  Counsel for these individuals also argues that the present settlement constitutes a "reverse auction" because he had previously rejected Defendants' settlement overtures and preferred to remain in litigation.

As detailed above, the present settlement was negotiated with Plaintiff having the benefit of discovery pursuant to the Federal Rules of Civil Procedure and only after hard-fought, arm's length negotiations.  Moreover, the fact that the present case has been settled while other, similar, class action cases have been pending does not support the conclusion that there has been an impermissible "reverse auction."  *See Negrete v. Allianz Life Ins. Co. of North America*, 523 F.3d 1091, 1099-1100 (9th Cir. 2008) (finding that fact class action has settled while parallel class action is pending insufficient to support conclusion that reverse auction occurred); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1189 (10th Cir. 2002).

If anything, the challenges to the Settlement Agreement asserted by these seven putative class members strongly support the Court granting preliminary approval.  By granting preliminary approval, notice of the proposed settlement will be provided to all other absent Class Members so that they, too, can be given an opportunity to weigh in on the terms of the proposed settlement.  Similarly, by granting preliminary approval, the Court will invoke the well-known

and recognized objection procedures of Rule 23 which directly contemplate objectors and permit them an opportunity to be heard by filing objections and appearing at the final hearing should they so wish. *See, e.g., Cohorst v. BRE Properties, Inc.*, 2011 WL 3489781 at * 8 (S.D. Cal. July 19, 2011) (*citing League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1306 (9th Cir. 1997)) (recognizing that when a class member objects to settlement terms, class member should file objection and not be permitted to intervene).

## VII. THE FORM AND METHOD OF CLASS NOTICE ARE ADEQUATE AND SATISFY THE REQUIREMENTS OF RULE 23.

Under Rule 23(e)(1) of the Federal Rules of Civil Procedure, when approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173-77 (1974); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village*, 361 F.3d at 575. Further, it is well established law, including in this Circuit, that an evaluation of notice for purposes of due process does not require actual receipt of notice by each individual class member. Indeed, due process requires only a good faith effort to provide actual notice, rather than the receipt of actual notice by every class member. *See In re Tableware Antitrust Litig.*, 2007 WL 1100314, at *2 (N.D. Cal. Apr. 12, 2007) (citing *Manual for Complex Litigation* (4th ed. 2004) § 21.311) (finding that publication notice is an acceptable method of providing notice where the identity of specific class members is not reasonably available.

The Parties' Settlement Agreement contemplates several forms of notice which more than adequately meet the requirements of Rule 23. Notice will be provided in both English and Spanish. Notice to the Settlement Class is to be accomplished first by direct mail to those Class Members for whom Defendant TracFone has a complete mailing address in its customer

database. To the extent mail is returned as undeliverable, Defendants will make a good faith attempt to locate such Class Members through the National Change of Address database. Next, for those Class Members for whom the Defendants are not able to provide direct mail notice, Defendants will provide email notice if an email address exists in Defendant TracFone's customer database. For current TracFone customers who are known to be Class Members and for whom TracFone does not have either a mailing address or an email address, and also for any Class Members who Defendants cannot, for whatever reason, provide direct mail or email notice, notice may be provided by SMS message, provided that the Court expressly provides, to the sole satisfaction of Defendants' Counsel, that such form of notice shall not violate the Telephone Consumer Protection Act (47 U.S.C. § 227) or other state or federal statute. Finally, notice is to be accomplished by publication in at least two newspapers or periodicals of national circulation (such as USA Today or Parade Magazine) and also an appropriate media designed to reach Spanish speaking Class Members on at least two occasions in two consecutive weeks. A website will be created containing information regarding the settlement, as well.

This multifaceted notice program is appropriate because of the nature of the information maintained by Defendant TracFone regarding its customers. Specifically, according to the deposition testimony of Karen Levine, TracFone does not require its customers provide it with identifying information when activating a cell phone service plan. If a customer elects to provide any identifying information, TracFone does not check or otherwise verify the accuracy of that information. Given that TracFone's cell phone plans are offered as free standing cards, as a pay as you go service, there is no need for TracFone to verify any information its customers provided it, and indeed, it has undertaken no such efforts.

Accordingly, the proposed notice plan is the best means practicable of providing notice pursuant to the dictates of Rule 23 and due process. Such an approach was approved by the Court in *In re AT&T Mobility Wireless Data Services Sales Tax Litigation*, 789 F. Supp. 2d 935,

970 (N.D. Ill 2011), where the notice plan consisting of mailed notice to existing customers with their bills, followed by text messages to customers, and supplemented by publication notice. *See also In re: Visa Check/MasterMoney Antitrust Litigation*, 2002 WL 31528478, at *3 (E.D. NY June 21, 2002) (notice plan consisting of direct mail notice to absent class members whose contact information was maintained by defendant, supplemented by publication notice, was best notice practicable pursuant to Rule 23 and due process); *Horton v. Leading Edge Marketing Inc.*, 2007 WL 2472046 at *5 (D. Co. Aug. 28, 2007) (notice plan including electronic mail, supplemented by first class mail for class members whose electronic email addresses were not maintained by Defendants or for class members for whom the initial electronic mail delivery failed, was reasonably likely to notify class members of settlement, which satisfied requirements of due process and Rule 23).

The parties have negotiated four forms of Notice, including: a Short Form notice, attached hereto as Exhibit D; a text, or "SMS," notice, attached hereto as Exhibit E; a Publication Notice, attached hereto as Exhibit F; and a Long Form notice, attached hereto as Exhibit B. All forms of the notices are written in plain and straightforward language consistent with Rules 23(c)(2)(B) and 23(e)(1). The Parties' proposed notice plan will objectively and neutrally apprise all Class Members of the nature of the action, the definition of the Class sought to be certified for purposes of the Settlement, the Class claims and issues, that Class Members may enter an appearance before the Court at the Fairness Hearing, that the Court will exclude from the Class any Class Member who opts out (and sets forth the procedures and deadlines for doing so), and the binding effect of a class judgment on Class Members under Rule 23(c)(3)(B). The proposed notice plan further will apprise Class Members of the procedures and deadlines for submitting objections.

## VIII.   CONCLUSION

**Plaintiff's Notice of Revised Motion / Revised Motion for Preliminary Approval of Class Action Settlement**

**Case No. 3:14-cv-01347**

Accordingly, John Browning, the Named Plaintiff, requests preliminary approval of the Settlement Agreement and entry of the agreed-upon proposed order, and to grant such other and further relief as this Court deems necessary and proper for the effective administration of this Class Action.

Dated: May 30, 2014                    Respectfully submitted,


_/s/J. Andrew Meyer_
J. ANDREW MEYER, ESQUIRE
Florida Bar No. 0056766
JOHN A. YANCHUNIS, ESQUIRE
Florida Bar No. 0324681
RACHEL SOFFIN, ESQUIRE
Florida Bar No. 018054
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4787


_Attorneys for Plaintiff_

**Plaintiff's Notice of Revised Motion / Revised Motion for Preliminary Approval of Class Action Settlement**

**Case No. 3:14-cv-01347**