Michael W. Sobol (State Bar No. 194857)
Roger N. Heller (State Bar No. 215348)
Nicole D. Sugnet (State Bar No. 246255)
LIEFF CABRASER HEIMANN
& BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  (415) 956-1000

Daniel M. Hattis (State Bar No. 232141)
Kirill M. Devyatov (State Bar No. 293106)
HATTIS LAW
2300 Geng Road, Suite 200
Palo Alto, CA 94303
Telephone:  (650) 980-1990

*Attorneys for Plaintiffs in Hansell, Gandhi, and Blaqmoor*

John A. Yanchunis (admitted *pro hac vice*)
J. Andrew Meyer (admitted *pro hac vice*)
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505

*Attorneys for Plaintiff in Browning*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID HANSELL, EDWARD TOOLEY, and CHRISTOPHER VALDEZ, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>TRACFONE WIRELESS, INC., d.b.a. STRAIGHT TALK WIRELESS, and WAL-MART STORES, INC.,<br><br>                    Defendants. | Case No.  CV 13-3440 EMC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  February 19, 2015<br>Time:  1:30 p.m.<br>Courtroom: 5, 17th Floor<br><br>Judge: Hon. Edward M. Chen |

| | |
|---|---|
| MARTIN BLAQMOOR, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>TRACFONE WIRELESS, INC.<br><br><br>    Defendant. | Case No. 13-cv-05295-EMC |
| MONA GANDHI, MARISHA JOHNSTON, and MARSHALL TIETJE, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>TRACFONE WIRELESS, INC.<br><br>    Defendant. | Case No. 13-cv-05296-EMC |
| JOHN BROWNING, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>TRACFONE WIRELESS, INC. and WAL-MART STORES, INC.,<br><br>    Defendants. | Case No.  14-cv-01347-EMC |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>NOTICE OF MOTION</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on February 19, 2015, at 1:30 p.m., in the Courtroom of the Honorable Edward M. Chen, United States District Judge for the Northern District of California, 450 Golden Gate Avenue, 17th Floor, Courtroom 5, San Francisco, California  94102, Plaintiffs David Hansell, Edward Tooley, Christopher Valdez, Mona Gandhi, Marisha Johnston, Marshall Tietje, Martin Blaqmoor, and John Browning, the Plaintiffs in the above-captioned cases ("Plaintiffs"), will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23, for an Order:

(a)     Granting preliminary approval of a proposed Class Settlement Agreement ("Settlement") entered into between the parties;[1]

(b)     Certifying, for settlement purposes, the proposed Class, as defined in the Settlement;

(c)     Appointing Michael W. Sobol of Lieff Cabraser Heimann & Bernstein LLP, Daniel M. Hattis of Hattis Law, and John A. Yanchunis and J. Andrew Meyer of Morgan & Morgan Complex Litigation Group, as Class Counsel representing the Class;

(d)     Appointing Plaintiffs David Hansell, Edward Tooley, Christopher Valdez, Mona Gandhi, Marisha Johnston, Marshall Tietje, Martin Blaqmoor, and John Browning as class representatives representing the Class;

(e)     Approving the parties' proposed notice program, including the proposed forms of notice, as set forth in the Settlement, and directing that notice be disseminated pursuant to such program;

(f)     Appointing Analytics LLC ("Analytics") as Settlement Administrator, and directing Analytics to carry out the duties and responsibilities of the Settlement Administrator specified in the Settlement;

---

[1] The Settlement is being submitted as Exhibit A to the Declaration of Michael W. Sobol, filed herewith.

1        (g)        Approving the parties' proposed Claim Form, and approving the

2    procedures set forth in the Settlement for Class Members to submit claims, exclude themselves

3    from the Class and object to the Settlement;

4        (h)        Staying all non-Settlement related proceedings in the above-

5    captioned cases (collectively, the "Action") pending final approval of the Settlement; and

6        (i)        Setting a Fairness Hearing and certain other dates in connection

7    with the final approval of the Settlement.

8        This motion is based on this notice of motion and motion, the accompanying

9    memorandum of points and authorities, the Settlement, including all exhibits thereto, the

10   accompanying declarations of Michael W. Sobol ("Sobol Decl."), Daniel M. Hattis ("Hattis

11   Decl."), John Yanchunis ("Yanchunis Decl."), J. Andrew Meyer ("Meyer Decl."), Jeanne C.

12   Finegan ("Finegan Decl."), and Richard W. Simmons ("Simmons Decl."), the argument of

13   counsel, all papers and records on file in this matter, and such other matters as the Court may

14   consider.

15   Dated:  February 11, 2015            By:   */s/ Michael W. Sobol*

16                                        Michael W. Sobol
                                          Roger N. Heller
17                                        LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                          275 Battery Street, 29th Floor
18                                        San Francisco, CA  94111-3336
                                          Telephone: (415) 956-1000
19
                                          Daniel M. Hattis
20                                        HATTIS LAW
                                          2300 Geng Road, Suite 200
21                                        Palo Alto, CA 94303
                                          Telephone:  (650) 980-1990
22
                                          *Attorneys for Plaintiffs in Hansell, Gandhi, and Blaqmoor*
23
                                          John A. Yanchunis
24                                        J. Andrew Meyer
                                          MORGAN & MORGAN
25                                        COMPLEX LITIGATION GROUP
                                          201 North Franklin Street, 7th Floor
26                                        Tampa, FL 33602
                                          Telephone: (813) 223-5505
27
                                          *Attorneys for Plaintiff in Browning*
28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I.      INTRODUCTION ....................................................................................................... 1

II.     BACKGROUND ......................................................................................................... 2

        A.     Procedural History ........................................................................................... 2

        B.     Class Counsel's Investigation and Discovery ............................................. 4

        C.     Settlement Negotiations .................................................................................. 4

III.    THE PROPOSED SETTLEMENT AND NOTICE PROGRAM........................... 5

        A.     Provisional Certification of the Settlement Classes .................................... 5

        B.     Benefits to the Class......................................................................................... 6

               1.     The Settlement Fund .............................................................................. 6

                      a.     Payments to Valid Claimants ................................................... 6

                      b.     The Claim Process ...................................................................... 7

                      c.     Mailing of Settlement Payments ............................................. 8

                      d.     Secondary Distribution and Disposition of Residual
                             Funds ........................................................................................... 8

               2.     Conduct Changes ................................................................................... 9

        C.     Notice Program ................................................................................................. 9

               1.     TracFone's Provision of Contact Information for the Class ........ 10

               2.     Mailed Notice......................................................................................... 10

               3.     Email Notice. ......................................................................................... 10

               4.     Publication, Media, and Internet Notice. ........................................ 11

               5.     Additional Internet-Based Notice. .................................................... 11

               6.     SMS Notice. ........................................................................................... 11

               7.     Settlement Website and Toll-Free Number................................... 11

        D.     Opt-Out Procedure ........................................................................................ 12

        E.     Opportunity to Object ................................................................................... 12

        F.     Payment of Attorneys' Fees and Expenses ............................................... 12

        G.     Service Awards for Class Representatives.................................................. 12

        H.     Release .............................................................................................................. 12

ARGUMENT ............................................................................................................................ 13

        A.     The Class Action Settlement Approval Process......................................... 13

        B.     Certification of the Proposed Class is Appropriate.................................. 13

               1.     Rule 23(a) is Satisfied. ......................................................................... 13

                      a.     The Class is Too Numerous to Permit Joinder. ................... 13

                      b.     This Action Presents Common Questions. ........................... 14

1

**TABLE OF CONTENTS**
(continued)

2

Page

3        c.    Plaintiffs' Claims are Typical. .......................................... 14

4        d.    Plaintiffs and Their Counsel Will Fairly and
              Adequately Protect the Interests of the Class
5              Members.......................................................................... 14

        2.    The Requirements of Rule 23(b)(3) are Satisfied. ...................... 15

6    C.   Preliminary Approval of the Settlement is Appropriate. ......................... 16

7        1.    The Settlement is the Product of Arms-Length Negotiations
              After a Thorough Investigation...................................................... 16

8        2.    The Settlement is Fair, Reasonable, and Adequate Given the
              Alleged Harm and the Potential Risks of Ongoing
9              Litigation........................................................................... 18

10       3.    The Settlement Treats all Class Members Fairly. ........................ 20

11       4.    The Recommendation of Experienced Counsel Favors
              Approval............................................................................. 20

12   D.   The Proposed Forms of Notice and Notice Program are Appropriate
         and Should be Approved........................................................................ 21

13   E.   The Court Should Schedule a Fairness Hearing and Corresponding
         Dates....................................................................................................... 21

14   CONCLUSION .................................................................................................. 22

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods. v. Windsor,*
  521 U.S. 591 (1997) ........................................................................................................ 15

*Armstrong v. Davis,*
  275 F.3d 849 (9th Cir. 2001) .......................................................................................... 14

*Churchill Village, L.L.C. v. Gen. Elec.,*
  361 F.3d 566 (9th Cir. 2004) ..................................................................................... 16, 21

*Class Plaintiffs v. City of Seattle,*
  955 F.2d 1268 (9th Cir. 1992) ........................................................................................ 16

*Ellis v. Naval Air Rework Facility,*
  87 F.R.D. 15 (N.D. Cal. 1980) ........................................................................................ 17

*Hanlon v. Chrysler Corp,*
  150 F.3d 1011 (9th Cir. 1998) ............................................................................... 14, 15, 16

*In re Heritage Bond Litig.,*
  2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) .............................................. 17

*In re Juniper Networks Sec. Litig.,*
  264 F.R.D. 584 (N.D. Cal. 2009) .................................................................................... 14

*In re Tableware Antitrust Litig.,*
  484 F.Supp.2d 1078 (N.D. Cal. 2007) ............................................................................ 16

*Jordan v. County of Los Angeles,*
  669 F.2d 1311 (9th Cir. 1982), *vacated on other grounds,* 459 U.S. 810 (1982) ............... 13, 14

*Knight v. Red Door Salons, Inc.,*
  2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) ................................................. 20

*Linney v. Cellular Alaska Partnership,*
  1997 WL 450064 (N.D. Cal. July 18, 1997) ................................................................... 20

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*
  244 F.3d 1152 (9th Cir. 2001) ........................................................................................ 15

*Otsuka v. Polo Ralph Lauren Corp.,*
  251 F.R.D. 439 (N.D. Cal. 2008) .................................................................................... 15

*Pilkington v. Cardinal Health, Inc.,*
  516 F.3d 1095 (9th Cir. 2008) ........................................................................................ 16

*Staton v. Boeing Co.,*
  327 F.3d 938 (9th Cir. 2003) .......................................................................................... 15

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Tait v. BSH Home Appliances Corp.*,
289 F.R.D. 466 (C.D. Cal. 2012) ........................................................................ 15

4

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) ................................................................................ 21

5

6

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) ........................................................................................ 14

7

*Wolin v. Jaguar Land Rover North Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) ............................................................................ 15

8

9

**RULES**

10

Fed. R. Civ. P. 23(a)(1) ....................................................................................... 13

11

Fed. R. Civ. P. 23(a)(3) ....................................................................................... 14

12

Fed. R. Civ. P. 23(b)(3) ....................................................................................... 15

13

Fed. R. Civ. P. 23(e)(2) ....................................................................................... 16

14

**TREATISES**

15

1 Newberg § 3.10 ................................................................................................. 14

16

4 Newberg on Class Actions (4th ed. 2002),
§ 11.22 *et seq.* ....................................................................................... 13, 16, 17

17

Manual for Complex Litigation, Fourth (Fed. Jud. Center 2004),
§§ 21.63 *et seq.* ................................................................................................ 13

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

Plaintiffs in the above-captioned cases (collectively, the "Action") respectfully submit for the Court's preliminary approval a proposed Class Settlement Agreement ("Settlement") resolving the Action.  Pursuant to the terms of the Settlement, Defendant TracFone Wireless, Inc. ("TracFone") has agreed to pay $40 million to establish a non-reversionary Settlement Fund from which Class Members who submit valid claims, and all Class Members for whom TracFone has a mailing address, will be sent cash payments.  Additionally, TracFone has agreed to make industry-leading practice changes including improving and replacing its advertising and packaging to clearly and prominently disclose its restrictions on the amount and speed of mobile data in its "unlimited" plans.  The Settlement was negotiated and entered into in conjunction with a settlement reached between TracFone and the Federal Trade Commission ("FTC") in a related action (the "FTC Settlement").[2]

The Settlement is the product of extensive arms-length negotiations between the parties and their experienced and informed counsel, was vetted by FTC personnel, and is absolutely fair, reasonable, and adequate given the claims, the alleged harm, and the parties' respective litigation risks.  The Settlement falls well within the "range of reasonableness" applicable at the preliminary approval stage.

Moreover, the settlement provides for a robust, multi-pronged notice program, which is well-tailored to provide Class Members the best notice practicable of the pendency of the Action, the terms of the Settlement, Class Counsel's fee application, and Class Members' opt-out rights and rights to object to the Settlement and/or Class Counsel's fee application.

Plaintiffs and their undersigned counsel believe the Settlement to be in the best interest of the Class Members and wish to begin the court approval process that is required for all class action settlements.  Plaintiffs therefore respectfully request that the Court review the Settlement, which is attached as Exhibit A to the accompanying Sobol Decl., and do the following:

(a)      Grant preliminary approval of the Settlement;

---

[2] *See* Case No. 3:15-cv-00392-EMC at Docket No. 1.

(b)     Certify, for settlement purposes, the proposed Class, as defined in the Settlement;

(c)     Appoint Michael W. Sobol of Lieff Cabraser Heimann & Bernstein LLP, Daniel M. Hattis of Hattis Law, and John A. Yanchunis and J. Andrew Meyer of Morgan & Morgan Complex Litigation Group, as Class Counsel representing the Class;

(d)     Appoint Plaintiffs David Hansell, Edward Tooley, Christopher Valdez, Mona Gandhi, Marisha Johnston, Marshall Tietje, Martin Blaqmoor, and John Browning as class representatives representing the Class;

(e)     Approve the parties' proposed notice program, including the proposed forms of notice, as set forth in the Settlement, and direct that notice be disseminated pursuant to such program;

(f)     Appoint Analytics LLC ("Analytics") as Settlement Administrator, and direct Analytics to carry out the duties and responsibilities of the Settlement Administrator specified in the Settlement;

(g)     Approve the parties' proposed Claim Form, and approve the procedures set forth in the Settlement for Class Members to submit claims, exclude themselves from the Class and object to the Settlement;

(h)     Stay all non-Settlement related proceedings in the Action pending final approval of the Settlement; and

(i)     Schedule a Fairness Hearing and certain other dates in connection with the final approval of the Settlement.

## II.     BACKGROUND

### A.     Procedural History

This litigation began in 2013.  The first-filed *Hansell* case was filed in this Court on July 24, 2013, alleging various claims based the advertising of TracFone's Straight Talk-branded mobile service plans as providing "unlimited" data when, in fact, TracFone had a practice of "throttling" (i.e., slowing) or suspending customers' data, or terminating their service altogether,

1  when the customer reached a certain undisclosed and/or inadequately disclosed data usage limit.

2  The *Hansell* case was filed on behalf of a putative nationwide class of Straight Talk customers.

3  On August 15, 2013, the *Browning* case was filed in the Southern District of Florida.  The

4  general allegations in the *Browning* case were substantially identical to the *Hansell* case.  The

5  initial complaint in the *Browning* case related to the Straight Talk brand and was filed on behalf

6  of a putative statewide class of Florida Straight Talk customers.

7  On October 7, 2013, Defendants filed a motion to transfer the *Hansell* case to the

8  Southern District of Florida.  The Court denied Defendants' motion to transfer on November 22,

9  2013.  (*Hansell* Docket No. 50).

10  On November 14, 2013, two additional related cases were filed in this District, the *Gandhi*

11  and *Blaqmoor* cases.  The general allegations and claims asserted in *Gandhi* and *Blaqmoor* were

12  likewise substantially identical to the *Hansell* case, except that they related to two different

13  TracFone brands, Net10 (*Gandhi*) and Simple Mobile (*Blaqmoor*).  The *Gandhi* case was filed on

14  behalf of a putative statewide class of California Net10 customers.  The *Blaqmoor* case was filed

15  on behalf of a putative nationwide class of Simple Mobile customers.  The *Gandhi* and *Blaqmoor*

16  cases were formally related to the first-filed *Hansell* case and assigned to this Court on November

17  21, 2014 (*Hansell* Docket No. 47).

18  On November 18, 2013, plaintiff in the *Browning* case filed an amended complaint in the

19  Southern District of Florida, which expanded the scope of the putative class in that case to a

20  nationwide class of customers who purchased service through four TracFone brands:  Straight

21  Talk, Net10, Simple Mobile, and Telcel America.

22  On December 20, 2013, the parties in the *Browning* case entered into a settlement

23  agreement (the "Browning Settlement"), and on February 10, 2014, plaintiff in the *Browning* case

24  filed a motion for preliminary approval of the Browning Settlement before Judge Marcia Cooke

25  of the Southern District of Florida.

26  On March 19, 2014, Judge Marcia Cooke transferred the *Browning* case to this District,

27  where it was assigned to this Court.  The parties in the *Browning* case submitted an amended

28  Browning Settlement on May 30, 2014, seeking preliminary approval of same.  The Court

1   permitted the *Hansell* plaintiffs to conduct discovery relating to the reasonableness of the

2   proposed *Browning* settlement.  While the motion for preliminary approval of the amended

3   Browning Settlement was pending in this Court, the parties in all of the cases reached an

4   agreement in principle to resolve the entire Action.

5       Defendants responded to each of the complaints in the Action by filing motions to compel

6   arbitration.  Defendants' arbitration motions in the *Hansell*, *Gandhi*, and *Blaqmoor* cases remain

7   pending, subject to further briefing which has been stayed.  Defendants' arbitration motions in the

8   *Browning* case was taken off calendar after the parties in *Browning* filed the initial Browning

9   Settlement.

10          **B.      Class Counsel's Investigation and Discovery**

11      Proposed Class Counsel conducted significant discovery and an extensive investigation

12   regarding the issues in the Action, prior to entering into the Settlement.  Before filing suit, Class

13   Counsel conducted a thorough investigation, including reviewing and analyzing TracFone's

14   marketing materials and packaging, reviewing TracFone's purported terms of service and the

15   methods by which such terms were communicated to consumers, and speaking with numerous

16   customers about their experiences with TracFone's products.  Moreover, Class Counsel have

17   conducted extensive ongoing factual investigation and legal research regarding the issues in the

18   Action.  Further, Class Counsel have taken significant discovery in this Action, including

19   reviewing thousands of documents produced by Defendants (including internal correspondence

20   and documents regarding TracFone's marketing of "unlimited" plans and relevant policies and

21   the development and implementation of the throttling and other practices at issue), reviewing and

22   analyzing pertinent TracFone customer and sales data, and deposing four senior TracFone

23   employees about the issues in the Action.    Sobol Decl., ¶5-7; Hattis Decl., ¶ 7-8; Meyer Decl.,

24   ¶¶ 5-8.

25          **C.      Settlement Negotiations**

26      The Settlement is the product of extensive, arms-length negotiations between the parties.

27   The parties engaged in two full-day mediation sessions with Prof. Eric Green of Resolutions,

28   LLC, the first on September 15, 2014 and the second on October 30, 2014.  With Prof. Green's

assistance, the parties were able to reach an agreement in principle on key deal terms during the second session.  The parties agreed that a class settlement would be entered into in conjunction with the resolution of a then-pending investigation of TracFone's practices by the FTC, which resolution TracFone was also in the process of negotiating.  The parties agreed, subject to Court approval, to the creation of a single $40 million Settlement Fund that would be used in the resolution of both the Action and the FTC's investigation, with such funds to be disseminated to Class Members pursuant to the terms of the class settlement and as approved by the Court.  After an agreement in principle was reached on the merits, the parties, with the assistance of Prof. Green, reached an agreement in principle regarding Class Counsel's request for attorneys' fees and expenses.  Sobol Decl., ¶ 8-9.[3]

Subsequent to the mediation, the parties have worked hard on finalizing settlement papers, have conferred extensively with the FTC regarding how best to coordinate the Settlement and FTC Settlement, and have worked closely with the Settlement Administrator to design a robust notice program.  Sobol Decl., ¶ 10-11.

## III.    THE PROPOSED SETTLEMENT AND NOTICE PROGRAM

### A.    Provisional Certification of the Settlement Classes

Plaintiffs seek provisional certification of a Class, defined in the Settlement as:

> All persons who purchased, in the United States, a Straight Talk, Net10, Simple Mobile, or Telcel America wireless service plan with "unlimited" data, who, at any time during the Class Period (July 24, 2009 through December 31, 2014), at TracFone's request, had their data usage Throttled, Suspended, or had all of their Services Terminated prior to the expiration of their service plan.

> Defendants are excluded from the Class as well as any entity in which either of the Defendants has a controlling interest, along with Defendants' legal representatives, officers, directors, assignees, and successors. Also excluded from the Class is any judge to whom the Class Action Lawsuits are assigned, together with any relative of such judge and the spouse of any such persons.

Defendants do not oppose certification of the Class for settlement purposes only.  (Settlement, § III)

---

[3] Additionally, the parties in *Browning* enganged in two full-day mediation sessions before Rodney Max, a highly skilled and experienced mediator, in connection with the Browning Settlement.

**B.**    **Benefits to the Class**

    **1.**    **The Settlement Fund**

Pursuant to the terms of the Settlement, TracFone will pay $40 million to the FTC which will establish a Settlement Fund to be used for: (a) providing compensation to Class Members who are "Valid Claimants"; and (b) payment of all Administrative Costs, including the costs of disseminating notice, distributing payments to class members, and other costs of the Settlement Administrator.  Any attorneys' fees and expenses for Class Counsel, and service awards for the Plaintiffs, that are awarded by the Court will be paid by TracFone *outside of and in addition to* the Settlement Fund, and thus will not reduce Class Members' payments.  (Settlement, §§ IV.B)

    **a.**    **Payments to Valid Claimants**

Pursuant to the Settlement, payments will be sent via mailed check to all Class Members who either: (a) submit a timely and valid claim; and/or (b) are an "Identified Class Member" (meaning that TracFone has a mailing address for them).  In other words, Class Members for whom TracFone has a mailing address, whether or not they submit a claim, will automatically be considered "Valid Claimants," and will be sent a check.[4] (Settlement, §§ IV.B, II.36 & 59)

Payment amounts for Valid Claimants will depend on the number of timely, valid claims that are submitted, how their service was affected, and when they were a TracFone customer. Specifically, for purposes of payment calculation, there are four "Categories" of Class Members (Settlement, § IV.B.4):

- <u>Category 1</u>:  Class Members whose data service was Throttled at TracFone's request between October 28, 2013 and December 31, 2014 (the end of the Class Period).

- <u>Category 2</u>:  Class Members whose data service was Throttled at TracFone's request between July 24, 2009 (the beginning of the Class Period) and October 27, 2013.[5]

- <u>Category 3</u>:  Class Members whose data service was Suspended at TracFone's request during the Class Period.

---

[4] TracFone estimates that it has mailing addresses for approximately 20-25% of the Class.

[5] The distinction between Categories 1 and 2 has to do with whether the customer had their data service throttled before or after October 28, 2013, which date is based on the approximate timing of disclosure changes that TracFone made about "unlimited" plans.

1   • Category 4:  Class Members who had all of their Services Terminated at TracFone's

2   request during the Class Period.

3   Payments will be calculated using this "Reference Chart" and as described further below:

| Category | Initial Amount | Maximum Amount |
|---|---|---|
| Category 1 | $2.15-$2.50 | $45.00 |
| Category 2 | $6.50 | $45.00 |
| Category 3 | $10.00 | $45.00 |
| Category 4 | $65.00 | $65.00 |

10   Valid Claimants will receive payments in the following amounts based on their applicable

11   "Category":

12      (a)   The Initial Amounts in the Reference Chart; or

13      (b)   If the total aggregate amount of payments to Valid Claimants, as calculated

14   using the Initial Amounts in the Reference Chart, is less than the "Net Distributable Funds" (*i.e.*,

15   the $40 million Settlement Fund minus Administrative Costs), then additional amounts will first

16   be applied to Category 1 until said payment is equal to the payment under Category 2.

17   Thereafter, the payment amounts to each of the four Categories will be increased on a *pro-rata*

18   basis up to the Maximum Amounts in the Reference Chart. (Settlement IV.B.4)

19      It should be noted that the "Initial Amounts" listed in the above Reference Chart are

20   intended to reflect the approximate payments that would be made if there were a *100% claim*

21   *rate*, meaning the actual payment amounts to Valid Claimants will almost certainly be higher.

22      **b.   The Claim Process**

23      All Class Members may submit claims for settlement payments.  Class Members will have

24   the option of submitting claims electronically via the Settlement Website or by mail.  The Claim

25   Form will be substantially in the form attached as Exhibit 1 to the Settlement.  The deadline for

26   submitting claims will be 90 days after the Notice Date.  (Settlement, §§ II.11, IV.B.3; V.C.6)

27      The Settlement Administrator will process claims.  To that end, TracFone will provide the

28   Settlement Administrator with the best data and information available to TracFone regarding the

Class Members' accounts (the "Customer Data").  Using the information provided by claimants

in their Claim Forms, and as can best be determined through TracFone's customer data, the

Settlement Administrator will verify claims and assign Valid Claimants into one of the four

"Categories" described above.[6]  (Settlement, §§ II.24, IV.B.3&4)

Valid Claimants who had more than one mobile phone number with TracFone that falls

within the Class definition may submit one claim for each such phone number.  (Settlement, §

IV.B.3)

### c. <u>Mailing of Settlement Payments</u>

Payments to Valid Claimants will be made by mailed check.  For checks that are returned

undeliverable with forwarding address information, the Settlement Administrator will re-mail the

check to the new address indicated.  For any checks that are returned undeliverable without

forwarding address information, the Settlement Administrator will make reasonable efforts to

identify updated address information and re-mail checks to the extent an updated address is

identified.   (Settlement, § IV.B.5)

### d. <u>Secondary Distribution and Disposition of Residual Funds</u>

Any funds remaining in the Settlement Fund one (1) year after the deadline for mailing the

initial settlement payment checks will be distributed: (a) to the extent feasible and practical in

light of the amount of funds remaining and the associated administrative costs, as a secondary

distribution to those Valid Claimants who negotiated their initial payment checks, with the

amounts of such secondary distribution checks separately calculated on a *pro-rata* basis, up to the

Maximum Amounts listed in the above Reference Chart; or (b) <u>only</u> if a secondary distribution is

not feasible or practical, or if funds remain in the Settlement Fund after a secondary distribution,

to the FTC for its use as provided in the FTC Agreement.  None of the Settlement Fund will

revert to Defendants.  (Settlement, § IV.B.6)

---

[6] It should be noted that for Class Members who had Simple Mobile unlimited plans prior to May 2013, TracFone has indicated that it does not have sufficient data to tell whether their service was throttled, suspended, or terminated.  The parties have agreed that Valid Claimants in this group will be designated as Category 1 or Category 2, depending on their indicated dates of service.

### 2. Conduct Changes

In addition to the monetary relief provided for in the Settlement, TracFone has agreed to make industry-leading practice changes including modifying its "unlimited plan" advertising and packaging to clearly and prominently disclose any throttling caps or limits and the lower speeds to which customers will be throttled.  TracFone has agreed to not only make changes to its future advertising; but also to instruct its retailers to remove existing advertising, plan cards, and products from the shelves and replace them with new Settlement-compliant materials.  TracFone has also agreed to adopt customer service measures to ensure that customers receive accurate information about the policies at issue.  The agreed conduct changes, the details and conditions of which are set forth in Section IV.C of the Settlement, include but are not limited to:

- TracFone will not advertise its mobile service plans as providing access to "unlimited" data unless it also makes clear and adjacent disclosures, as detailed in the Settlement, regarding any applicable throttle limits or caps and the actual speeds to which customer data will be slowed.

- TracFone's terms and conditions will describe the impact throttling can have on the functionality of services.

- TracFone will improve its customer service to ensure that customers contacting TracFone receive accurate information about TracFone's throttling, suspension, and service termination policies, and about the impact throttling can have on the functionality of services.

- TracFone will advise customers by SMS message when their data speed has been throttled upon reaching specified data usage caps.

(Settlement, § IV.C)

### C. Notice Program

The Settlement includes a robust, multi-pronged notice program that is well-designed to give Class Members the best notice practicable of the Settlement, the claims process and deadline, Class Counsel's fee application, and their opt-out and objection rights.  As set forth

below, the notice program will be administered with the help of an independent Settlement

Administrator,[7] and will consist of several parts.  (Settlement, § V)

### 1.     TracFone's Provision of Contact Information for the Class

As part of its provision of the "Customer Data," TracFone will provide the Settlement

Administrator with any contact information it has in its records for the Class Members, including

names, last known mailing addresses, and email addresses.[8]  (Settlement, §§ V.C.1, II.24)

### 2.     Mailed Notice

Notice will be mailed to those Class Members for whom there is a mailing address in the

Customer Data.  By the "Notice Date" (*i.e.*, 30 days following the entry of the Preliminary

Approval Order; *see* Settlement, § II.40), the Settlement Administrator will update the mailing

addresses in the Customer Data through the National Change of Address Database, and mail the

Summary Settlement Notice, substantially in the form attached as Exhibit 6 to the Settlement, to

each mailing address in the Customer Data, as updated.  Appropriate steps will be taken to re-

mail Summary Settlement Notices that are returned undeliverable.  (Settlement, § V.C.B, Ex. 6)

### 3.     Email Notice.

Notice will be emailed to those Class Members for whom there is an email address in the

Customer Data.  By the Notice Date, the Settlement Administrator will email the Email

Summary Notice, substantially in the form attached as Exhibit 8 to the Settlement, to each email

address in the Customer Data that is not indicated in the Customer Data as being on TracFone's

do not contact list.  By no later than seven days following the Notice Date, the Settlement

Administrator shall also email the Email Summary Notice to each email address that is not in the

Customer Data but that is provided on a Claim Form received by the Settlement Administrator

prior to or on the Notice Date.  (Settlement, § V.C.2, Ex. 8)

---

[7] The parties request that the Court appoint Analytics LLC ("Analytics") to serve as the
Settlement Administrator.  Analytics' experience and qualifications are set forth in the
accompanying Simmons Decl.

[8] TracFone does not have any contact information for a significant portion of the Class, due to the
nature of the no-contract, pre-paid service plans at issue.

**4.     Publication, Media, and Internet Notice.**

Notice will also be provided via publication notice of the Summary Settlement Notice and via a media and Internet notice program, including banner ads on Internet sites and mobile applications targeted to the Class.  The parties have been working closely with HF Media, who will be supporting the Settlement Administrator on this issue, to design an effective publication and media/Internet notice program.  The accompanying declaration of Jeanne C. Finegan, President of HF Media, describes the program and its anticipated reach.  Finegan Decl., ¶¶ 13-38.  Such program will commence as soon as practicable following the entry of the Preliminary Approval Order and in no event later than the Notice Date.  (Settlement, § V.C.3).

**5.     Additional Internet-Based Notice.**

Beginning no later than the Notice Date, and lasting until and through the Claim Deadline, notice will be prominently posted on the Straight Talk, Net10, Simple Mobile, and Telcel America brands' Facebook pages and Internet home pages—including the pages that customers view when logging into their online TracFone accounts.  (Settlement, § V.C.4)

**6.     SMS Notice.**

To the extent directed by the Court, and conditioned upon the Court making a specific finding in the Preliminary Approval Order that these are informational messages pertaining to the TracFone subscribers' service, the SMS Notice, substantially in the form attached as Exhibit 7 to the Settlement, will be sent via SMS (text message), to Class Members who are current subscribers to a TracFone data service plan and who have not opted out of receiving such messages.[9]  (Settlement, § V.5, Ex. 7)

**7.     Settlement Website and Toll-Free Number.**

The Settlement Administrator will establish and maintain a Settlement Website, www.PrepaidPhoneRefund.com where Class Members can submit claims electronically, obtain additional information, and access copies of the operative complaints, the Settlement, the long-form Class Notice, and Class Counsel's Fee Application (after it is filed).  (Settlement, § V.C.6)

The Settlement Administrator will also establish and maintain a toll-free number where

---

[9] SMS Notice, should the Court approve it and make the findings required, is the only feasible way to get direct notice to a large portion of the Class.  TracFone has no contact information for much of the Class, and a substantial portion of the Class are current TracFone subscribers.

1  Class Members can obtain additional information and request a hard copy Claim Form or long-

2  form Class Notice.  (Settlement, § V.C.7)

3  **D.      Opt-Out Procedure**

4  Any person within the Class definition may request to be excluded from the Class by

5  sending a written request, clearly stating their desire to be excluded, to the Settlement

6  Administrator, postmarked by the deadline proscribed by the notice. (Settlement, § VI)

7  **E.      Opportunity to Object**

8  Any Class Member who does not timely and validly request to be excluded may object to

9  the Settlement, Class Counsel's fee application, and/or the requests for service awards for the

10  Plaintiffs.  To be considered, an objection must be sent to the Settlement Administrator,

11  postmarked by the deadline proscribed by the notice, and must include the information proscribed

12  by the notice.  (Settlement, VII, Ex. 2).

13  **F.      Payment of Attorneys' Fees and Expenses**

14  Class Counsel will apply for, and Defendants will not oppose, an award of attorneys' fees

15  and litigation costs in amounts not to exceed: (a) $5 million for attorneys' fees; and (b)

16  $100,000.00 for litigation costs.  Any attorneys' fees and costs awarded to Class Counsel will be

17  paid by TracFone in addition to (*i.e.*, on top of) the Settlement Fund.  (Settlement, § IX)

18  **G.      Service Awards for Class Representatives**

19  Class Counsel will request, and Defendants will not oppose, service awards of $2,500

20  each for the Plaintiffs.   Any service awards will be paid by TracFone in addition to (*i.e.*, on top

21  of) the Settlement Fund.  (Settlement, § IX.F)

22  **H.      Release**

23  In exchange for the benefits provided pursuant to the Settlement, Plaintiffs and Settlement

24  Class Members will release Defendants and related entities from any claims they may have

25  related to the issues in these cases.  (Settlement, § VIII)

26

27

28

1

## ARGUMENT

2

### A.     The Class Action Settlement Approval Process

3

Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined three-

4

step procedure for approval of class action settlements:

5

(1)     Certification of a settlement class and preliminary approval
of the proposed settlement after submission to the Court of a written

6

motion for preliminary approval.

7

(2)     Dissemination of notice of the proposed settlement to the
affected class members.

8

9

(3)     A formal fairness hearing, or final settlement approval
hearing, at which evidence and argument concerning the fairness,
adequacy, and reasonableness of the settlement are presented.

10

*See* Manual for Complex Litigation, Fourth (Fed. Jud. Center 2004), §§ 21.63 *et seq.*  This

11

procedure safeguards class members' procedural due process rights and enables the Court to

12

fulfill its role as guardian of class interests.  *See* 4 Newberg on Class Actions, § 11.22 *et seq.* (4th

13

ed. 2002) ("Newberg").

14

With this motion, Plaintiffs respectfully request that the Court take the first step in the

15

settlement approval process by granting preliminary approval of the proposed Settlement; appoint

16

a Settlement Administrator; direct that notice be disseminated to the Class pursuant to the

17

proposed notice program; and issue the related relief requested herein.

18

### B.     Certification of the Proposed Class is Appropriate

19

Certification of the Class for settlement purposes is appropriate because Rule 23(a) and

20

Rule 23(b)(3) are satisfied.

21

#### 1.     Rule 23(a) is Satisfied.

22

##### a.     The Class is Too Numerous to Permit Joinder.

23

A case may be certified as a class action only if "the class is so numerous that joinder of

24

all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  While there is no fixed rule, a class with

25

at least 40 members is generally sufficiently large.  *Jordan v. County of Los Angeles*, 669 F.2d

26

1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982).  The Class here

27

includes millions of TracFone customers.

28

-13-

**b.**      **This Action Presents Common Questions.**

Rule 23(a)(2) requires that there be one or more questions common to the class.  *See Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1019 (9th Cir. 1998); 1 Newberg § 3.10; *see also Wal-Mart Stores, Inc*. *v. Dukes*, 131 S. Ct. 2541, 2556 (2011).  The claims in the Action raise common questions, including whether Defendants' promise of "unlimited" data was objectively material, whether Defendants' promise of "unlimited" data was likely to mislead reasonable consumers, whether Defendants' terms and conditions were adequately disclosed, and whether Defendants acted in bad faith through the common policies and practices at issue.

**c.**      **Plaintiffs' Claims are Typical.**

Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality does not require total identity between representative plaintiffs and class members.  *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).  Rather, typicality is satisfied so long as the named plaintiffs' claims stem "from the same event, practice, or course of conduct that forms the basis of the class claims, and is based upon the same legal theory."  *Jordan*, 669 F.2d at 1322; *In re Juniper Networks Sec. Litig.*, 264 F.R.D. 584, 589 (N.D. Cal. 2009) ("representative claims are 'typical' if they are reasonably co-extensive with those of absent class members") (citation omitted).

Here, the named Plaintiffs' claims stem from the same common course of conduct as the claims of the Class Members.  Plaintiffs and all Class Members purchased TracFone's brands' mobile service plans that were advertised as providing "unlimited" data, and had their data services throttled, suspended, or had all of their services terminated by TracFone. The typicality requirement is thus satisfied here.

**d.**      **Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class Members.**

Rule 23(a)(4) requires that the representative plaintiffs will "fairly and adequately" protect the interests of the class.  The two-prong test for determining adequacy is:  "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members?; and (2) will the representative plaintiffs and their counsel prosecute the action

1   vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003);

2   *Hanlon*, 150 F.3d at 1020.  Both prongs are satisfied here.

3         First, the named Plaintiffs' interests are aligned with, and not antagonistic to, the interests

4   of the Class Members.  Plaintiffs have the same interest as all Class Members in obtaining

5   redress.  *See Hanlon*, 150 F.3d at 1021 (adequacy satisfied where "each…plaintiff has the same

6   problem").  Second, proposed Class Counsel have extensive experience litigating and settling

7   class actions, including consumer cases.  They have demonstrated expertise in handling all

8   aspects of class actions, and are well qualified to represent the Class.  Sobol Decl., ¶¶ 1-4; Hattis

9   Decl., ¶¶ 3-6; Yanchunis Decl., ¶¶ 3-10; Meyer Decl., ¶ 4.  Moreover, Plaintiffs and proposed

10  Class Counsel remain fully committed to advancing the interests of, and obtaining relief for, the

11  Class Members, as evidenced by, *inter alia*, the terms of the proposed Settlement.

12        **2.**      **The Requirements of Rule 23(b)(3) are Satisfied.**

13        In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must

14  be satisfied.  Here, the proposed Class satisfies Rule 23(b)(3), which permits a class action if the

15  Court finds that "questions of law or fact common to class members predominate over any

16  questions affecting only individual members, and that a class action is superior to other available

17  methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

18  Common issues predominate here.  That is particularly so given that, if the proposed Settlement is

19  approved, there will be no need for a trial, and thus manageability of the classes for trial need not

20  be considered.  *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

21        Moreover, a class action is superior to other methods of litigation where, as here, class

22  treatment will promote greater efficiency and no realistic alternative exists.  *See Local Joint Exec.*

23  *Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir.

24  2001); *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 448 (N.D. Cal. 2008).  Individual

25  prosecution of the claims in these cases is impractical.  *Tait v. BSH Home Appliances Corp.*, 289

26  F.R.D. 466, 486 (C.D. Cal. 2012) ("superiority requirement is met '[w]here recovery on an

27  individual basis would be dwarfed by the cost of litigating on an individual basis.'") (quoting

28  *Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)).

### C.   Preliminary Approval of the Settlement is Appropriate.

Public policy "strong[ly] . . . favors settlements, particularly where complex class action litigation is concerned."  *Pilkington v. Cardinal Health, Inc.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

"[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof." *Hanlon*, 150 F.3d at 1026.  In exercising such discretion, the Court should give "proper deference to the private consensual decision of the parties…[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Hanlon*, 150 F.3d at 1027; *see also* Fed. R. Civ. P. 23(e)(2).

At the preliminary approval stage, a court need only find that the proposed settlement is within the "range of reasonableness," such that dissemination of notice to the class and the scheduling of a fairness hearing are worthwhile and appropriate.  4 Newberg § 11.25; *see also In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079-80 (N.D. Cal. 2007).

The proposed Settlement here satisfies the standard for preliminary approval because: (a) it is the product of hard-fought, arms-length negotiations between the parties, reached after a thorough investigation by proposed Class Counsel of the facts and the law; (b) it provides strong relief that is appropriately tailored to the alleged harm, and is fair, reasonable, and adequate given the claims and the parties' respective litigation risks; and (c) it was negotiated by, and recommended by, experienced Class Counsel.

### 1.   The Settlement is the Product of Arms-Length Negotiations After a Thorough Investigation

"Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties."  *City of Seattle*, 955 F.2d at 1290.  Where a settlement is the

1    product of arms-length negotiations conducted by capable and experienced counsel, the court

2    begins its analysis with a presumption that the settlement is fair and reasonable.  *See* 4 Newberg

3    § 11.41; *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *32 (C.D. Cal. June 10,

4    2005); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).

5         The Settlement submitted for the Court's consideration is the product of hard-fought,

6    arms-length negotiations between the parties and their well-qualified counsel.  The parties

7    participated in two full-day mediation sessions before an experienced mediator, Prof. Eric Green

8    of Resolutions LLC, and were able to reach an agreement with the help of Prof. Green.  During

9    the past months, counsel for the parties, and have been working to finalize the settlement papers,

10   have been conferring extensively with the FTC regarding the best way to coordinate the

11   Settlement and the FTC Settlement.  Sobol Decl., ¶¶ 8-11.  Throughout these negotiations, the

12   parties were represented by counsel experienced in the prosecution, defense and settlement of

13   complex class actions.

14        The Settlement is also informed by Plaintiffs' extensive investigation and discovery

15   regarding the legal and factual issues in the Action.  Before filing suit, Class Counsel conducted a

16   thorough investigation, including reviewing and analyzing TracFone's marketing materials and

17   packaging, reviewing TracFone's purported terms of service and the methods by which such

18   terms were communicated to consumers, and speaking with numerous customers about their

19   experiences with TracFone's products.  Moreover, Class Counsel have conducted extensive

20   ongoing factual investigation and legal research regarding the issues in the Action.  Further, Class

21   Counsel have taken significant discovery in this Action, including reviewing thousands of

22   documents produced by Defendants (including internal correspondence and documents regarding

23   TracFone's marketing of "unlimited" plans and relevant policies and the development and

24   implementation of the throttling and other practices at issue), reviewing and analyzing pertinent

25   TracFone customer and sales data, and deposing four senior TracFone employees about the issues

26   in the Action.    Sobol Decl., ¶¶ 5-7; Hattis Decl., ¶¶ 7-10; Meyer Decl., ¶¶ 5-8.

27

28

2. **The Settlement is Fair, Reasonable, and Adequate Given the Alleged Harm and the Potential Risks of Ongoing Litigation.**

The Settlement provides substantial, valuable relief to the Class, including both strong monetary relief and important conduct changes that will protect millions of consumers going forward. The claim process is designed to make claim submission convenient for Class Members. Moreover, the $40 million Settlement Fund, from which Class Members will be paid, represents a very strong monetary result for the Class given the harm alleged and the substantial risks of ongoing litigation. All Class Members who submit timely and valid claims, as well as all Class Members for whom TracFone has a mailing address (whether or not they submit a claim) will be sent payments. Moreover, if there are sufficient residual funds after claims are paid, there will be a secondary distribution to the Class.

Further, the Settlement provides for the payment of Class Counsel's attorneys' fees and costs *on top of* the Settlement Fund. By contrast, if the case were litigated to trial, most or all of Class Counsel's fee would likely come out of whatever class damages were recovered, which would reduce the actual payments to the Class Members accordingly.

The Settlement also provides for important conduct changes that are well-tailored to the claims in this Action and will benefit and protect millions of Class Members and other consumers going forward. The Settlement requires very specific disclosures which some 4 million customers who were throttled in the past 16 months did not have the benefit, whereas those who may be subject to throttling in the future will be thoroughly apprised. This injunctive relief is also of significant value.

The Settlement also provides the Class Members with another significant benefit that they could not receive if they proceeded to trial—prompt relief. Proceeding to trial could add years to the resolution of this Action, given the legal and factual issues raised and likelihood of appeals. Prompt relief is particularly critical in this case. Due to the nature of TracFone's no-contract services, the more time that passes, the more difficult it will be to get Class Members relief as the members of the Class become more and more difficult to identify.

To put the $40 million Settlement Fund amount in perspective, the average cost of a monthly "unlimited" service plan from TracFone during the Class Period was approximately

1  $45.00. Assuming Plaintiffs were to overcome the numerous pre-trial obstacles in this Action,

2  prevail at trial and on an inevitable appeal, and ultimately recover damages equal to the full cost

3  of one month of service for each of the approximately 8 million Class Members, then the total

4  class damages in that scenario would be approximately $360 million. While Plaintiffs believe

5  they would have a credible basis for seeking twice that amount at trial (*i.e.*, the cost of two

6  months of service), Defendants argue that Class Members were on notice of TracFone's policies

7  the first month their service was affected, and could have discontinued their no-contract service

8  plans at that time. Thus, there is uncertainty regarding whether Plaintiffs could have recovered

9  more than one full month's charge per Class Member even in the proverbial "home run" scenario.

10  Defendants also argue that any damages would have to be limited to reflect the fact that

11  Class Members' plans included three services—talk, text, and data—and that TracFone's

12  throttling and suspension practices only affected one of the three services (data). If accepted by

13  the fact finder, this argument could reduce damages by as much as two-thirds (*i.e*., to $120

14  million if one month of service is the starting point).

15  Defendants also argue that even for the data portion, Class Members got some of what

16  they paid for—*i.e.*, data service for the period of the month before they were throttled or

17  suspended. Defendants have argued, the throttling and suspension typically occurred in the latter

18  part of the service month. However, if on average customers were throttled in the middle of the

19  month, this could cut in half the amount claimed for any one-month's throttling (resulting say, in

20  a $60 million recovery at trial, if the $120 million starting point referenced above was accepted).

21  While Plaintiffs do not agree with them, TracFone's damages arguments present

22  significant risks to recovering two full months' service charges. Even before these arguments are

23  considered, the $40 million Settlement Fund represents a substantial amount. When the

24  possibility of Defendants prevailing on some or all of its damages arguments is considered, it is

25  clear that $40 million represents a very strong monetary result for the Class, particularly in light

26  of the other litigation risks in this case.

27  Among other risks, Defendants have filed motions to compel arbitration in each of the

28  underlying cases. Obviously, if those motions were successful, it would spell the end of the

1   litigation.[10]  Moreover, liability remains disputed in the case as well, as does the question of

2   whether a nationwide class trial would be manageable.  Among other arguments and defenses that

3   Defendants have asserted and/or indicated they will assert are: (a) Class Members' purchase

4   decisions were not motivated by, or exclusively by, the representations about the "unlimited" data

5   plan; (b) TracFone's service agreements permitted the conduct at issue; (c) TracFone's service

6   plans are less expensive than comparable plans available in the market; and; (d) Plaintiffs and the

7   class members cannot demonstrate that they have been harmed.

8        While Plaintiffs believe that they can overcome these defenses, they are indicative of the

9   risks, hurdles, and delays that Plaintiffs and the Class face should this matter proceed in litigation.

10  The proposed Settlement provides considerable monetary and injunctive relief for the Class

11  Members while allowing them to avoid the risks of unfavorable, and in some cases dispositive,

12  rulings on these and other issues.

13        **3.      The Settlement Treats all Class Members Fairly.**

14        All Class Members are allowed to submit claims for settlement payments.  Moreover,

15  Class Members' respective payment amounts will be based on their "Category" designation, and

16  are reasonably tied to how each Class Member's service was affected.

17        **4.      The Recommendation of Experienced Counsel Favors Approval.**

18        In considering a proposed class settlement, "[t]he recommendations of plaintiffs' counsel

19  should be given a presumption of reasonableness."  *Knight v. Red Door Salons, Inc.*, 2009 U.S.

20  Dist. LEXIS 11149, at *11 (N.D. Cal. Feb. 2, 2009); *see also Linney v. Cellular Alaska*

21  *Partnership*, 1997 WL 450064, at 5 (N.D. Cal. July 18, 1997).  Here, counsel for all parties

22  endorse the Settlement as fair, adequate, and reasonable.  Sobol Decl., ¶ 12; Hattis Decl., ¶¶ 21-

23  25; Yanchunis Decl., ¶¶ 25-26; Meyer Decl., ¶ 13.

24        Class Counsel have extensive experience litigating and settling consumer class actions and

25  other complex matters.  They have conducted an extensive investigation into the factual and legal

26  issues raised in this Action.  The fact that qualified and well-informed counsel endorse the

27

28  [10] Consumers would be faced to pursue their individualized claims through arbitration, unlikely given the small damages suffered by each Class Member.

settlements as being fair, reasonable, and adequate weighs heavily in favor of the Court approving the Settlement.

**D.     The Proposed Forms of Notice and Notice Program are Appropriate and Should be Approved.**

The proposed forms of notice and notice program here fully comply with due process and Fed. R. Civ. P. 23.  Rule 23(c)(2)(B) requires:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must concisely and clearly state in plain, easily understood language:  the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members under Rule 23(c)(3).

In the context of a class settlement, the notice must also include a general description of the proposed settlement.  *See Churchill Village*, 361 F.3d at 575; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

The proposed forms of notice here include the required information.  *See* Settlement, Exs. 2, 6, 8.  Moreover, the robust, multi-pronged proposed notice program, detailed above, is well-designed to ensure the best notice practicable under the circumstances.  *See infra* section III(C).

**E.     The Court Should Schedule a Fairness Hearing and Corresponding Dates.**

The next steps in the settlement approval process are to notify the Class of the proposed Settlement, allow Class Members an opportunity to exclude themselves or file objections, and hold a Fairness Hearing.  Towards those ends, the parties propose the following schedule:

| | |
|---|---|
| Last day for TracFone to provide the Customer Data to the Settlement Administrator | **[Upon entry of the Preliminary Approval Order, to the extent TracFone has not already done so in compliance with the Settlement.]** |
| Notice Date | **[30 days following entry of the Preliminary Approval Order]** |
| Last day for: (a) the Parties to file any motions in support of final approval of the Settlement; and (b) Class Counsel to file their Fee Application and | **[30 days following the Notice Date]** |

| request for service awards for Plaintiffs | |
|---|---|
| Opt-Out Deadline | **[60 days following the Notice Date]** |
| Objection Deadline | **[60 days following the Notice Date]** |
| Last day for the Parties to file any responses to objections, and any reply papers in support of final approval of the Settlement or Class Counsel's Fee Application or request for Plaintiff service awards | **[80 days following the Notice Date]** |
| Claim Deadline | **[90 days following the Notice Date]** |
| Fairness Hearing | **_____ ___, 2015 at _:_ _.m. [No earlier than the Claim Deadline]** |

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court do the following:

      (a)     Grant preliminary approval of the Settlement;

      (b)     Certify, for settlement purposes, the proposed Class;

      (c)     Appoint Michael W. Sobol of Lieff Cabraser Heimann & Bernstein LLP, Daniel M. Hattis of Hattis Law, and John A. Yanchunis and J. Andrew Meyer of Morgan & Morgan Complex Litigation Group, as Class Counsel;

      (d)     Appoint David Hansell, Edward Tooley, Christopher Valdez, Mona Gandhi, Marisha Johnston, Marshall Tietje, Martin Blaqmoor, and John Browning as class representatives;

      (e)     Approve the parties' proposed notice program, including the proposed forms of notice, and direct that notice be disseminated pursuant to such program;

      (f)     Appoint Analytics LLC ("Analytics") as Settlement Administrator, and direct Analytics to carry out the duties and responsibilities of the Settlement Administrator specified in the Settlement;

1          (g)     Approve the parties' proposed Claim Form, and approve the

2  procedures set forth in the Settlement for Class Members to submit claims, exclude themselves

3  from the Class and object to the Settlement;

4          (h)     Stay all non-Settlement related proceedings in the Action pending

5  final approval of the Settlement; and

6          (i)     Schedule a Fairness Hearing and certain other dates, as proposed

7  herein, in connection with the final approval of the Settlement.

8  Dated:  February 11, 2015        By:  */s/ Michael W. Sobol*

9

10                       Michael W. Sobol
Roger N. Heller
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3336
Telephone: (415) 956-1000

Daniel M. Hattis
HATTIS LAW
2300 Geng Road, Suite 200
Palo Alto, CA 94303
Telephone:  (650) 980-1990

*Attorneys for Plaintiffs in Hansell, Gandhi, and Blaqmoor*

John A. Yanchunis
J. Andrew Meyer
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505

*Attorneys for Plaintiff in Browning*